OPINION OF THE COURT
Edward M. Rappaport, J.
Defendant New York City Housing Authority (NYCHA) moves for an order pursuant to CPLR 3212 granting it summary judgment dismissing the complaint. In a second, amended notice of motion, NYCHA seeks similar relief, but further seeks an order dismissing the cross claims asserted against it. NYCHA also seeks an award of costs for this motion. For the convenience of the court, the initial motion is deemed to be subsumed by the amended motion.
Infant plaintiff and his mother commenced an action against defendants seeking damages for injuries suffered by infant plaintiff as a result of exposure to lead paint. Infant plaintiff, born in December 1990, and his mother resided at apartment 35C, at 652 Willoughby Avenue, Brooklyn, New York, from about the time of infant’s birth until October 2, 1993. Said apartment and building is owned by defendant 642-652 Wil-loughby Avenue Corp. While residing at that apartment, infant plaintiff was diagnosed as having high blood lead levels. Upon examination of the apartment, it was found to contain high levels of lead paint. Subsequently, on or around October 2, *225 1993, plaintiffs moved to 2970 27th Street, Brooklyn, New York, apartment 709, where they continued to reside through the time of the complaint in the within action. The latter apartment and building is owned by defendant Sea Park East Co. Despite the move, infant plaintiff continued to test positive for elevated blood lead levels. An inspection by the New York City Department of Health on June 17, 1994 resulted in a determination that the second apartment, too, had high levels of lead paint. Plaintiffs’ tenancies at both apartments were pursuant to the Federal section 8 program (42 USC § 1437f).
The stated grounds upon which defendant NYCHA seeks summary judgment are: that it is a nonowner Public Housing Authority (PHA) and, as such, there is no private right of action under the Federal section 8 statute, the Lead-Based Paint Poisoning Prevention Act (Pub L 91-695, 84 US Stat 2078 [LPPPA]) or their implementing regulations; that neither the section 8 statute, the LPPPA, nor their implementing regulations impose any affirmative duty on a PHA to enforce local and State laws concerning lead paint; that there is no direct cause of action against a PHA (nonowner of premises) for failure to enforce State and local laws regarding lead paint; and that there are no causes of action in tort against a nonowner PHA.
For the reasons stated below, NYCHA’s motion is granted.
Plaintiffs assert that a direct private right of action does exist under the Federal section 8 regulations and the LPPPA. The section 8 and LPPPA statutes and implementing regulations are sufficiently intertwined that they should be viewed as one body of law, promulgated with the objective of combating the evils of lead paint (see, Roman v Morace, 1997 WL 777844, at 8-9, 1997 US Dist LEXIS 19926 [SD NY, Dec. 16, 1997, Cote, J.]).
“Whether an implied private right of action exists under a federal statute is strictly a matter of congressional intent” (Chan v City of New York, 1 F3d 96, 101, cert denied 510 US 978). “The test reflects a concern, grounded in the separation of powers, that Congress rather than the courts controls the availability of remedies for violations of statutes” (Wilder v Virginia Hosp. Assn., 496 US 498, 509, n 9).
In Cort v Ash (422 US 66), the Supreme Court set forth four factors courts are required to consider in determining whether an individual may have a private right of action under a Federal statute that is silent on the subject:
*226 (a) whether the plaintiff is one of the class for whose “especial” benefit Congress enacted the statute, that is, does the statute create a Federal right in favor of the plaintiff;
(b) whether there exists any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one;
(c) whether it remains consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff; and
(d) whether the cause of action is one traditionally relegated to State law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on Federal law {supra, at 78).
Some courts have combined these four criteria into a single question of legislative intent (see, Monaghan, Federal Statutory Review Under Section 1983 and the APA, 91 Colum L Rev 233, 235). This court will nevertheless address them separately.
a. Does the LPPPA Create a Federal Right in Plaintiffs Favor?
Courts examine three factors to determine whether a particular statutory provision gives rise to a Federal right (see, Wilder v Virginia Hosp. Assn., supra, 496 US, at 509). First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must show that the asserted right is not so vague and amorphous that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation upon the States, meaning the provision must be couched in mandatory rather than precatory terms (see, Blessing v Freestone, 520 US 329, 341, citing Wilder v Virginia Hosp. Assn., supra, 496 US, at 510-511).
The LPPPA specifies that Housing and Urban Development (HUD) “shall establish procedures to eliminate as far as practicable the hazards of lead based paint poisoning with respect to any existing housing which may present such hazards and which is covered” by a HUD program, such as section 8 (42 USC § 4822 [a] [1]). The LPPPA’s implementing regulations* declare that their purpose is “to assure that purchasers and *227 tenants of all HUD-associated housing constructed prior to 1978 are notified of the hazards of lead-based paint which may exist in such housing, of the symptoms and treatment of lead-based paint poisoning, and of the importance and availability of maintenance and removal techniques” (24 CFR 35.1). NYCHA does not dispute that the NYCHA’s relationship to plaintiffs arose pursuant to the Federal section 8 program through which plaintiffs’ apartment was subsidized. Plaintiffs are clearly members of the class of persons for whose benefit Congress enacted the LPPPA. Therefore, plaintiffs have met the first part of the Wilder test.
The LPPPA also contains specific and enforceable requirements. 24 CFR part 982 requires a PELA to conduct an initial lead paint inspection of section 8 housing units, as well as periodic inspections thereafter. The regulations set forth procedures the PHAs must follow in inspecting for the presence of lead paint (see, 24 CFR 982.405). These regulations are thus specific enough to create a Federal right, and the clarity of these requirements renders them capable of judicial enforcement. Whereas enforcement of vague terms such as “reasonable efforts” — a standard a Federal court found did not create a Federal right in Suter v Artist M. (supra, 503 US, at 363)— might “strain judicial competence” (Blessing v Freestone, supra, 520 US, at 341), the enforcement of the regulations in this case would not. The statute thus meets the second part of the Wilder test.
Finally, the requirements the regulations impose on the PBLAs are not permissive. In addition to being detailed, they employ the term “shall” in explaining the PHA’s obligations in conducting investigations, as well as in outlining the owners’ duties to conduct treatment abatement (see, e.g., 24 CFR 982.401). The regulations, therefore, are sufficiently “couched in mandatory, rather than precatory, terms” (Blessing v Freestone, supra, 520 US, at 341) to create a Federal right.
The court finds that the LPPPA meets all three prongs of the Wilder test and therefore provides plaintiffs with an enforceable Federal right. Thus, plaintiffs satisfy the first part of the Cort test.
*228 b. Is There Legislative Intent to Create or Deny a Federal Remedy?
The second portion of the Cort test focuses on whether there exists any indication of legislative intent, explicit or implicit, to create or deny a Federal remedy (see, Cort v Ash, supra, 422 US, at 78). The LPPPA regulations, as they appeared in 1992, are silent in regard to whether individuals may privately enforce them. 24 CFR 982.406, however, which became effective on October 2, 1995, states that it “does not create any right of the family, or any party other than HUD or the PHA, to require enforcement of the [Housing Quality Standards] requirements by HUD or the PHA, or to assert any claim against HUD or the PHA, for damages, injunction or other relief, for the alleged failure to enforce the [Housing Quality Standards].” Thus, this provision unambiguously denies a private right of action against PHAs, at least as of October 2, 1995, when the provision became effective. Although the promulgation of 24 CFR 982.406 suggests to this court an intent to clarify that a private right of action had never been authorized, the regulation is not conclusive evidence that Congress did not intend to create such a right during the period when the cause of action in this case arose.
The regulations in place now and before the 1995 revisions create enforcement mechanisms to ensure that owners and PHAs comply with Federal standards. To ensure owners’ compliance, for example, PHAs may withhold section 8 payments or terminate their contracts entirely (see, 24’ CFR 982.404 [a] [2], [3]). To ensure PHAs’ compliance, HUD must review program operations and inspect PHAs’ records (see, 24 CFR 982.401). This enforcement scheme supports the view that Congress intended HUD to bear the primary responsibility for ensuring PHA compliance with all program requirements, which in turn supports a finding that a private right of action is inconsistent with congressional intent (see, Lindsay v New York City Hous. Auth., 1999 WL 104599, 1999 US Dist LEXIS 1893 [ED NY, Feb. 24,1999, Gleeson, J.]). Consequently, the statute fails to meet the second part of the Cort test.
c. Is Private Enforcement Consistent with the Underlying Purpose of the Legislative Scheme?
For the reasons stated above, the court finds that implying a private right of action under the LPPPA is inconsistent with the legislative purposes underlying the statute. Congress provided an administrative scheme, to remedy violations of the *229 LPPPA by vesting in HUD the responsibility of ensuring that owners and PHAs comply with Federal requirements. The statute itself specifies that HUD “shall establish procedures to eliminate as far as practicable the hazards of lead based paint poisoning with respect to any existing housing which may present such hazards and which is covered” by a HUD program (42 USC § 4822 [a] [1]). The administrative mechanisms advance the statute’s purpose of assuring “that purchasers and tenants of all HUD-associated housing constructed prior to 1978 are notified of the hazards of lead-based paint which may exist in such housing, of the symptoms and treatment of lead-based paint poisoning, and of the importance and availability of maintenance and removal techniques” (24 CFR 35.1). Because it appears that Congress erected a regulatory scheme in sufficient detail to accomplish the LPPPA goals, the court concludes that the implication of a private remedy is inconsistent with that purpose (see, Chan v City of New York, supra, 1 F3d, at 102, cert denied 510 US 978).
d. Is this Cause of Action Traditionally Relegated to State Law?
The fourth part of the Cort test — whether the cause of action is one so traditionally relegated to the States that an implied Federal cause of action would be inappropriate — weighs in favor of plaintiffs. Although housing inspection has traditionally been a State and local function, Congress has declared its intention to supercede such authority with respect to lead paint detection (see, 24 CFR 35.40 [c]). This express usurpation of local standards regarding lead paint inspection and removal provides sufficient substantiation for the conclusion that a Federal cause of action would not be appropriate.
Considering all the Cort factors together, the court finds that Congress did not intend to create a private right of action under the LPPPA. While nothing exists in the legislative history or the text of the statute indicating an intent to deny a private remedy, neither does any such evidence point to an intent to confer a private remedy. “The federal judiciary will not engraft a remedy on a statute, no matter how salutary, that Congress did not intend to provide” (California v Sierra Club, 451 US 287, 297). This court, too, is not inclined to create Federal remedies where the Federal courts have not. Thus “ ‘the essential predicate for implication of a private remedy simply does not exist’” (DiLaura v Power Auth., 982 F2d 73, 77).
Likewise, neither the section 8 statute, the LPPPA nor their implementing regulations impose an affirmative duty on the *230 PHA to enforce local and State laws concerning lead paint. Pursuant to 24 CFR 982.404, the responsibility for maintenance rests primarily on the property owner and not the PHA. The PHA’s only remedies against a recalcitrant owner are termination, suspension or reduction of housing assistance payments (HAP) and termination of the HAP contract. (24 CFR 982.404 [a] [2].) Unless NYCHA is the owner of a building, there is no statutory or regulatory provision that requires the nonowner PHA to abate lead paint conditions.
Plaintiffs also contend that notwithstanding Federal statutes, NYCHA had a duty under common law to conduct a proper lead paint inspection prior to allowing tenants to move in, and that having assumed that duty, NYCHA’s negligent inspection renders it liable for damages proximately caused by its failure to detect hazardous lead levels in the apartment.
In Roman v Morace (supra, 1997 WL 777844, at 11-12, 1997 US Dist LEXIS 19926) the court held, inter alla, that the plaintiffs tenants — whose claims closely resembled those of the instant plaintiffs — had no common-law cause of action against NYCHA for violations of State and local lead paint poisoning laws, since such laws imposed the duties of enforcement on entities other than NYCHA, such as the Department of Health.
“It is settled law that a municipality cannot be held liable for negligently exercising its governmental functions unless there is proof of the existence of a special duty owing to the persons injured in contrast to a duty owed to the general public * * * ‘Such a duty is found when a special relationship exists between the municipality and an individual or class of persons, warranting the imposition of a duty to use reasonable care for those persons’ benefit * * * This principle operates to impose liability * * * where the municipality has voluntarily assumed a duty, the proper exercise of which was justifiably relied upon by persons benefited thereby’ * * *
“ ‘Establishment of a special relationship requires demonstration of (1) the municipality’s assumption, through promise or actions, of an affirmative duty to act on behalf of the victim, (2) knowledge on the part of the municipality’s agents that inaction could lead to harm, (3) some form of direct contact between the municipality’s agents and the victim, and (4) justifiable reliance by the victim upon the municipality’s affirmative undertaking’” (Bargy v Sienkiewicz, 207 AD2d 606, 608-609).
In the instant case, there is no proof that NYCHA acted beyond its usual scope as a PHA, and there is no proof that a special relationship existed between NYCHA and plaintiffs.
*231 Accordingly, NYCHA’s motion is granted to the extent of dismissing the complaint and any and all claims asserted against said defendant, and the action is severed accordingly.

 According to the relevant case law, courts may consider implementing regulations in determining whether a statute creates a Federal right (see, e.g., Blessing v Freestone, 520 US 329, supra [implicitly taking into account regulations implementing title IV-D of the Social Security Act in analyzing *227 whether Act created Federal right]; Suter v Artist M., 503 US 347, 361-362 [considering regulations promulgated by the Secretary of Health and Human Services implementing the Adoption Assistance and Child Welfare Act of 1990 in determining whether children had Federal right to enforce provisions of Act]; Wright v City of Roanoke Redevelopment & Hous. Auth., 479 US 418, 431 [considering HUD regulations in determining whether Federal right existed]).