R.I.S.E., INC., et al., Plaintiffs,

v.

Robert A. KAY, Jr., et al., Defendants.

Civ. A. No. 3:90CV00680.

United States District Court,
E.D. Virginia,
Richmond Division.

June 21, 1991.

See also 768 F.Supp. 1144.

Sa'ad El–Amin, Richmond, Va., for plaintiffs.

John Granville Douglass, Jonathan Steven Geldzahler, Wright, Robinson, McCammon, Osthimer & Tatum, Richmond, Va., for defendants Robert A. Kay, Jr., Robert H. Bourne, Jr., Raymond F. Alsop, Wilbur L. Hickman, and James R. Walton.

Dennis Patrick Lacy, Jr., William Jeffrey Dinkin, Clayton Lewis Walton, Timothy George Hayes, Samuel Miles Dumville, Hazel, Thomas, Fiske, Beckhorn & Hanes, Richmond, Va., for defendant Browning–Ferris Industries of South Atlantic.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, District Judge.

This matter is before the Court on the defendants' motion for summary judgment, pursuant to Fed.R.Civ.Proc. 56(b). The motion for summary judgment on Count One, which alleges a violation of the Equal Protection Clause of the Fourteenth Amendment, is DENIED for the reasons discussed below. The motion for summary judgment on the remaining counts is GRANTED.

*Factual Background*

The plaintiff, a bi-racial community organization formed for the purpose of halting the development of a regional landfill in King and Queen County, filed an equal protection lawsuit against the County Board of Supervisors on December 26, 1990. R.I.S.E. challenges the Board's acquisition of a purchase option on a 420 acre site for the development of a regional landfill in an area populated primarily by African Americans and charges the Board with maintaining a pattern and practice of racial discrimination in landfill location and zoning.

On December 11, 1989, the County entered into an agreement with Chesapeake Corporation to acquire for $21,000 an exclusive two-year option to purchase 420 acres for the sum of $420,000. The land had been recommended in November of 1989 by a two member committee of the Board as a potential landfill site. The County acquired the purchase option after a public hearing and Board executive session approving the acquisition in early December of 1989. At the time of its acquisition, the 420 acre site was zoned for agricultural and low density rural uses (an "A/LDR district"). On July 2, 1990 the Board approved a recommendation to rezone the 420 acre site for industrial use. Article XII, Section 12–1 of the County's Zoning Ordinance states that "I" districts

are intended to provide locations for light industrial and manufacturing uses, and related service and support uses, "which involve minimal hazards and do not create significant amounts of smoke, noise, odor, dust or other public nuisance ..." Section 12–1 further provides that an "I" District "is intended to be located on primary highways to facilitate needed access to uses and to avoid industrial traffic impacts on minor and secondary roads."

The Board began to solicit proposals for landfill operation in mid-February. The Board had by this time enlarged the scope of the operation from a county to a regional landfill. At an August, 1990 meeting, the Board approved a resolution to enter a lease agreement with BFI to operate the proposed landfill. The BFI proposal was one of two proposals received by the Board. On or about August 27, 1990, the Board executed a lease agreement between the Board and BFI to operate a regional landfill on the 420 acre site to handle collection and disposal of solid waste generated throughout the eastern Virginia region.

The proposed landfill will be located in a predominantly black area near the intersection of state routes 609 and 614. All three of the already operating county-run landfills are similarly located in predominantly black areas. The landfill near SR 640 is in the immediate proximity of the First Mt. Olive Baptist Church, a large African American church. Second Mt. Olive Baptist Church, one of the oldest African American churches, is located at the intersection of state routes 614 and 609, near the site of the proposed landfill. Plaintiffs allege that both Route 614 and Route 609 are "minor and secondary roads" inadequate for landfill access purposes absent substantial improvement.

*Argument*

■ Genuine issues of material fact concerning discriminatory intent preclude summary judgment in this case. In *Village of Arlington Heights v. Metropolitan Housing Development Housing Development Corporation*, 429 U.S. 252, 266–68, 97 S.Ct. 555, 563–65, 50 L.Ed.2d 450 (1977), the Supreme Court listed six factors to consider in determining whether an action is intentionally discriminatory: 1) the effect of the official action, 2) the historical background of the decision, 3) the specific sequence of events leading up to the challenged decision, 4) departures from normal procedures, 5) departures from normal substantive criteria, and 6) the administrative history of the decision.

The plaintiff offers evidence that suggests the possibility of a pattern of disparate treatment of whites and blacks with respect to the placement of landfills during the past 25 years. Specifically, the three county-run landfills in operation, as well as the proposed landfill that is the subject of this suit, are located in predominantly black neighborhoods. The Supreme Court's decision in *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976) made it clear that official action will not be held unconstitutional solely because it results in a racially disproportionate impact. *Arlington Heights v. Metro. Housing Corp.*, 429 U.S. 252, 264–5, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977). However, the impact of an official action on different racial groups "may provide an important starting point" for a determination of whether official action was motivated by discriminatory intent. *Id.* at 266, 97 S.Ct. at 564.

The plaintiffs provide evidence of Board solicitation of the approval of an influential white landowner, without which the corporation operating the landfill would not undertake the project. Moreover, the plaintiffs provide evidence that white resistance to the operation of a private landfill in a predominantly white residential neighborhood resulted in official denial of a proposed zoning variance necessary for the industrial use of a site zoned for agricultural use only. In contrast, the concerns of black residents about the effect of the proposed landfill on property values in the adjacent neighborhoods did not result in similar treatment. Rather, county officials approved a sudden change in zoning that transformed the site from one appropriate for agricultural use only to one appropriate for industrial use to accommodate the proposed landfill.

The Supreme Court in *Arlington Heights* stated that "[d]etermining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct intent as may be available." The evidence provided by the plaintiffs of the disparate impact of county landfill placement on black residents, the contrast between official responsiveness to white resistance to landfill development and apparent nonresponsiveness to the concerns of black residents, and departures from normal procedures in gaining approval for the landfill suggests that the decision to locate the landfill in a predominantly black community may have been motivated by discriminatory intent. The existence of factual disputes regarding the critical issue of intent renders summary judgment on the Equal Protection Clause of the Fourteenth Amendment count inappropriate.

■ Count Three of the complaint, which alleges a violation of the Virginia Procurement Act, is dismissed against the Board of Supervisors for the same reason it was dismissed against the Chesapeake Corporation by order of March 1, 1991. Briefly, the Virginia Procurement Act applies only to the purchase and sale of goods and services and not to real property and applies only to "bidders" and "offerors" in the context of competitive bidding and negotiation. Even if the plaintiff did not lack standing to bring a Procurement Act claim against the Board, it is time-barred because such a claim must be made within ten days of an award or its announcement.

■ Count Four charges that the failure to gain assurances of improvements to the roads leading to and from the landfill constitutes "arbitrary and capricious action" in violation of the Due Process Clause of the Fourteenth Amendment. The Due Process Clause of the Fourteenth Amendment protects property owners from government actions which substantially eliminate the value of their property. *See e.g. United States v. General Motors Corp.*, 323 U.S. 373, 378, 65 S.Ct. 357, 359, 89 L.Ed. 311 (1945); *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922). However, the Fourteenth Amendment does not protect a property owner from a decline in the value of his property resulting from a government decision to put neighboring public property to a lawful though unattractive use. *Reichelderfer v. Quinn*, 287 U.S. 315, 53 S.Ct. 177, 77 L.Ed. 331 (1932); see also *Ancarrow v. City of Richmond*, 600 F.2d 443 (4th Cir.), *cert. denied* 444 U.S. 992, 100 S.Ct. 523, 62 L.Ed.2d 421 (1979) (unattractive use to which city put James River may have detrimental effect on value of property along shore but does not constitute due process violation). Moreover, general health, safety and environmental concerns do not constitute property or liberty subject to due process protection. *West Chicago, Ill. v. U.S. Nuclear Regulatory Commission*, 701 F.2d 632, 644 (7th Cir.1983); *Ely v. Velde*, 451 F.2d 1130, 1139 (4th Cir.1971). For these reasons, summary judgment for the defendant is GRANTED on Count Four.

Count Two, which alleges a conspiracy to deny equal protection, was rendered moot when the other two defendants in the case were dismissed. For this reason, the motion for summary judgment on Count Two is GRANTED.

It is so ORDERED.