■ WANDA BARGY, Individually and as Parent and Natural Guardian of MICHAEL BARGY, and Another, Infants, Respondent, v ULITA SIENKIEWICZ et al., Defendants, and JAMES T. MURPHY et al., Respondents, and COUNTY OF ALBANY, Appellant. [615 NYS2d 520] —Cardona, P. J. Appeal from an order of the Supreme Court (Conway, J.), entered May 26, 1993 in Albany County, which, inter alia, denied defendant County of Albany's motion for summary judgment dismissing the complaint and all cross claims against it.

Plaintiff and her two infant sons, Michael Bargy (born in 1986) and Shaun Bargy (born in 1984), were recipients of

public assistance in Albany County. As recipients, the infants were provided medical care from the pediatrics clinic of the Albany County Health Department (hereinafter ACHD), including routine lead screenings pursuant to the State's lead poisoning control and prevention laws and the regulations promulgated thereunder (see, Public Health Law §§ 1370-1376; 10 NYCRR part 67).[1]

In July 1988, the screening of Michael Bargy revealed that he had an elevated blood lead level. On August 3, 1988, in response to this screening report, David Adley, a staff member of the County's Division of Environmental Health Services (hereinafter DEHS), conducted an inspection of plaintiff's dwelling, an apartment then located at 159 Broad Street in the City of Albany, and determined that a lead paint hazard existed.[2] ACHD notified the landlord to abate the hazard and advised the infants' father that plaintiff and the infants should vacate the apartment during abatement of the hazard. Plaintiff and the infants left the apartment. Adley met with the landlord's agent and explained how to remediate the hazard. During the abatement process, plaintiff spoke to Adley by telephone on several occasions inquiring about the progress of the work and when she could return to the apartment. Adley reinspected the apartment on August 31, 1988, found the work completed, told plaintiff the hazard had been abated and that she could move back in.

On October 31, 1988, plaintiff and the infants moved to an apartment located at 117 Broad Street in the City of Albany because she had noticed that the apartment at 159 Broad Street was chipping again, posing a health hazard to her youngest son. In March 1989, Michael Bargy was again diagnosed with an elevated blood lead level which required his hospitalization. Adley inspected the apartment at 117 Broad Street on March 30, 1989 and determined that a lead hazard existed. Plaintiff was notified to vacate the apartment, which she did. The landlord was notified to abate the hazard. Plain-

---

1. Pursuant to Public Health Law § 1375 (1), a county commissioner of health may exercise the authority to enforce the State's lead poisoning control and prevention laws. The record shows that the detection and abatement of conditions conducive to lead poisoning are handled by ACHD's Division of Environmental Health Services.

2. Public Health Law § 1370 (3) terms a lead hazard as " '[a] condition conducive to lead poisoning' ", which is defined as: "(i) paint or other similar surface-coating material containing lead in a condition accessible for ingestion or inhalation or where peeling or chipping of the paint or other similar surface-coating material occurs or is likely to occur; and (ii) other environmental conditions which may result in significant lead exposure."

tiff intermittently contacted Adley to inquire about the abatement progress and also when they could move back into the apartment. Adley reinspected the apartment on April 24, 1989 and found the work completed. Plaintiff and the infants returned to the apartment.

In November 1989, screening of Shaun Bargy revealed an elevated blood lead level. On December 6, 1989, Adley inspected the dwelling and found a mild lead hazard. He notified the new owner to abate the hazard. Plaintiff and the infants vacated the apartment and, once again, intermittently contacted Adley to inquire when they could return. Adley met with the owner on December 15, 1989 and showed him what work had to be done. On January 16, 1990, Adley reinspected and determined that the house was properly abated. Plaintiff and the infants returned. The children continued to receive routine screening for blood lead levels between December 6, 1989 and April 24, 1990. Those tests were negative.

On or about April 24, 1990, a screening of Michael Bargy revealed that he had an elevated blood lead level which again required his hospitalization. On June 8, 1990, DEHS staff member Edward Podgorski inspected plaintiff's apartment and determined that no lead hazard existed; however, testing of samples of paint chips allegedly taken from the window sills in the living room and kitchen by an independent contractor revealed dangerously high lead levels. Plaintiff and the infants permanently vacated the apartment on August 1, 1990.

Plaintiff subsequently commenced actions against the landlords of the respective apartments and the County, which were consolidated. In the action against the County, plaintiff alleges that the infants sustained personal injuries caused by the negligence of the County in conducting the three inspections and investigations of lead levels at the 117 Broad Street apartment. These inspections and investigations constitute governmental functions. It is settled law that a municipality cannot be held liable for negligently exercising its governmental functions unless there is proof of the existence of a special duty owing to the persons injured in contrast to a duty owed to the general public (see, *Garrett v Holiday Inns,* 58 NY2d 253, 261-262; *Florence v Goldberg,* 44 NY2d 189, 195-196; *Sanchez v Village of Liberty,* 42 NY2d 876; *Helman v County of Warren,* 111 AD2d 560, *affd* 67 NY2d 799). "Such a duty is found when a special relationship exists between the municipality and an individual or class of persons, warranting the imposition of a duty to use reasonable care for those persons' benefit * * * This principle operates to impose liability * * *

where the municipality has voluntarily assumed a duty, the proper exercise of which was justifiably relied upon by persons benefited thereby" *(Garrett v Holiday Inns, supra,* at 261-262).

The sole issue presented for our review is whether plaintiff adduced sufficient evidence in opposition to the County's motion for summary judgment to raise triable issues of fact regarding the existence of a special relationship between her infant sons and the County so as to create a duty to protect them from harm resulting from lead poisoning *(see, Cuffy v City of New York,* 69 NY2d 255, 260-262). Supreme Court found that such a question of fact existed and denied the County's motion. The County appeals.

"Establishment of a special relationship requires demonstration of (1) the municipality's assumption, through promise or actions, of an affirmative duty to act on behalf of the victim, (2) knowledge on the part of the municipality's agents that inaction could lead to harm, (3) some form of direct contact between the municipality's agents and the victim, and (4) justifiable reliance by the victim upon the municipality's affirmative undertaking" *(Zwart v Town of Wallkill,* 192 AD2d 831, 832; *see, Cuffy v City of New York,* 69 NY2d 255, 260, *supra).*

The thrust of the County's argument is that evidence sufficient to raise triable issues as to the elements of assumption of a duty to act affirmatively on behalf of the infants and justifiable reliance is lacking. We disagree.

The evidence shows that the County's response to the reports of the infants' elevated blood lead levels may have exceeded its general duty of inspection and abatement *(see,* 10 NYCRR 67-4.4, 67-4.7). By recommending the removal of the infants during the abatements and keeping plaintiff apprised of the progress of each abatement, the County, contrary to its argument, may have voluntarily assumed a particular duty to use due care for the benefit of the infants *(see, Florence v Goldberg, supra,* at 195-197) to protect them from lead poisoning. Furthermore, plaintiff's claims that she vacated the apartment each time she was advised that Adley found a lead hazard, and thereafter stayed in contact with him until she obtained his approval to return, supports a reasonable inference that she relied upon the County's assumption of a duty to protect her children from potential lead poisoning through its inspections and representations regarding the detection and abatement of lead hazards in the apartment. Therefore, we conclude that summary judgment was properly denied, inasmuch as the proof adduced in opposition to the motion

was sufficient to create triable issues of fact *(see, Zwart v Town of Wallkill,* 192 AD2d 831, 834, *supra; Berliner v Thompson,* 166 AD2d 78, 82, 83).

Mikoll, Crew III, White and Casey, JJ., concur. Ordered that the order is affirmed, with one bill of costs.