Victoria M. LELAND; Roy R. Leland; and Maxine Chapin, Plaintiffs,

v.

Marc MORAN; Alan Fuchs; Albert Klauss; David G. Pollock; Town of Wawarsing; Gerald Depew; Joseph Stoeckler, John Kissell; Village of Ellenville; Raymond Younger; Michael Mills; Joseph Straub; and Village of Ellenville Police Department, Defendants.

No. 99–CV–1449.

United States District Court, N.D. New York.

June 22, 2000.

522 F.2d at 412.

142

Michael H. Sussman, Goshen, NY, for plaintiffs.

Scott A. Thornton, New Hampton, NY, for plaintiffs.

Hon. Eliot Spitzer, Attorney General of the State of New York, Department of Law, Albany, NY, Joseph Koczaja, Asst. Attorney General, of counsel, for New York State defendants (Moran, Fuchs, Klauss and Pollock).

Kalter, Kaplan & Zeiger, Woodbourne, NY, Ivan Kalter, of counsel, for Town of Wawarsing defendants (Town, Depew, Stoeckeler and Kissell).

Carter, Conboy, Case, Blackmore, Napierski & Maloney, P.C., Albany, NY, Kimberly Furnish, of counsel, for Village of Ellenville defendants (Village, Younger, Mills, Straub and Police Department).

## MEMORANDUM–DECISION AND ORDER

HURD, District Judge.

### I. INTRODUCTION

On September 13, 1999, plaintiffs commenced the instant action, pursuant to 42 U.S.C. § 1983, alleging that the defendants violated their rights under the Fourteenth Amendment and the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901–6992k ("RCRA"). Plaintiffs have also asserted a claim against the defendants for negligence.

1. At oral argument, the plaintiffs agreed to a dismissal of their RCRA claim against the

Defendants Village of Ellenville, Raymond Younger, Michael Mills, Joseph Straub, and the Village of Ellenville Police Department (collectively referred to in this opinion as "Ellenville defendants"), have moved to dismiss the RCRA claim for lack of subject matter jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1),[1] and to dismiss the remaining claims for failure to set out facts upon which relief may be granted, pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiffs oppose. Oral argument was heard on May 25, 2000, in Albany, New York. Decision was reserved.

### II. FACTS

The following is a summary of facts as alleged in the complaint. Such facts are assumed to be true for purposes of this motion. See Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); see also Boyd v. Nationwide Mut. Ins. Co., 208 F.3d 406, 408 (2d Cir.2000) (stating that "[on] a motion to dismiss on the pleadings, we take as true the allegations contained in plaintiff['s] ... complaint, which provides the basis of our recitation of the facts.").

In the early 1980's, the Ellenville Scrap Yard ("ESY"), which is located adjacent to the property owned by the plaintiffs, began operating without a permit as a solid waste management facility. ESY stored waste tires and accepted construction and demolition ("C & D") debris and other solid waste for disposal.

In March of 1987, the owners of ESY proposed a Settlement of Claim to the Department of Environmental Conservation ("DEC"), acknowledging that ESY was operating as a solid waste management facility without a permit and agreeing to pay a $1,500.00 fine and close and cover the area where C & D material had been dumped. Several inspections made by the DEC between May 1, 1989 and

Ellenville defendants, making this aspect of the motion moot.

June of 1998 revealed that ESY continued its illegal dumping activities. The inspectors noted large amounts of C & D debris, oily runoff entering surface waters, and contaminated soil. Environmental testing revealed elevated levels of cadmium, chromium, copper, lead, mercury, zinc, and PCB's on and around ESY's property. However, the site was never closed.

As a result of ESY's continued violations, two Consent Orders were entered into between the owners of ESY and the DEC. In the first one, entered into in January 1995, the owners of ESY agreed to make a preliminary assessment of the site and recommend remediation. In the second Consent Order, entered into in May of 1997, the owners agreed to remove all illegal waste by September 1, 1997 and pay a $2,500.00 fine. Neither order was complied with. Finally, on April 29, 1998, after another inspection revealed continued dumping at ESY and no efforts to clean up the site, the DEC sent a notice of violations to the owners of ESY. On August 28, 1998, the New York State Supreme Court, County of Ulster issued a temporary restraining order closing ESY and prohibiting further receipt of waste.

During this time, the plaintiffs called Ellenville officials several times to complain about the problems at ESY and to request that ESY be shut down. Plaintiffs were told that the ESY situation was the DEC's problem and they had no authority to take any action. The illegal dumping continued and the Ellenville defendants took no steps to remedy the situation or close the site. To date, no cleanup has ever occurred at ESY.

Plaintiffs claim that the Ellenville defendants violated their due process rights under the Fourteenth Amendment by failing to enforce the Village of Ellenville Zoning Code ("Zoning Code"). The Ellenville defendants contend that plaintiffs' Fourteenth Amendment claim must be dismissed because the plaintiffs have no constitutionally protected property interest. The Ellenville defendants further claim that plaintiffs' claims against the Village should be dismissed because the plaintiffs have failed to demonstrate municipal liability in this case. The individual Ellenville defendants assert that they are protected from liability under the doctrine of qualified immunity. Finally, the Ellenville defendants seek dismissal of plaintiffs' negligence claim. Each of these arguments will be addressed seriatim below.

### III. *DISCUSSION*

#### A. *Motion To Dismiss Standard*

A cause of action shall not be dismissed for failure to state a claim under Fed. R.Civ.P. 12(b)(6), "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99. In considering a motion brought pursuant to Fed.R.Civ.P. 12(b), the court must assume all of the allegations in the complaint are true, and draw all reasonable inferences in plaintiff's favor. *See Stuto v. Fleishman*, 164 F.3d 820, 824–25 (2d Cir.1999). In reviewing the sufficiency of a complaint at the pleading stage, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A dismissal under Rule 12(b)(6) may be made where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Citibank, N.A. v. K–H Corp.*, 968 F.2d 1489, 1494 (2d Cir.1992) (citing *Austern v. Chicago Bd. Options Exch., Inc.*, 898 F.2d 882, 885 (2d Cir.), *cert. denied*, 498 U.S. 850, 111 S.Ct. 141, 112 L.Ed.2d 107 (1990)). Where a motion to dismiss is made prior to any discovery or the filing of an answer, the court is loath to dismiss the complaint, regardless of whether the plaintiff is unlikely to prevail, unless the defendant can demonstrate that plaintiff is unable to prove facts which would entitle him to

relief. *See Wade v. Johnson Controls, Inc.,* 693 F.2d 19, 22 (2d Cir.1982); *see also Egelston v. State Univ. College,* 535 F.2d 752, 754 (2d Cir.1976).

### B. *Fourteenth Amendment Claim*

The Ellenville defendants argue that the plaintiffs have no constitutionally protected right to enforcement of zoning laws against a third party. In addition, the Ellenville defendants contend that the Village has discretion regarding whether to enforce the Zoning Code, and therefore, the plaintiffs do not have a constitutionally protected right to challenge discretionary enforcement decisions. However, the defendants' arguments misinterpret plaintiffs' claims.

A claim based on a violation of due process must involve the deprivation of a recognized life, liberty, or property interest. *See DeShaney v. Winnebago County Dep't of Soc. Servs.,* 489 U.S. 189, 195–96, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). "Property interests . . . are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understanding that stem from an independent source such as state law." *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Gotkin v. Miller,* 514 F.2d 125, 128 (2d Cir.1975). Further, to have a property interest in a benefit, a plaintiff must have a legitimate claim of entitlement to it. *Roth,* 408 U.S. at 577, 92 S.Ct. 2701.

■ The due process clause of the Fourteenth Amendment protects property owners from government actions which substantially eliminate the value of their property. *R.I.S.E., Inc. v. Kay,* 768 F.Supp. 1141, 1144 (E.D.Va.1991) (citing *United States v. General Motors Corp.,* 323 U.S. 373, 378, 65 S.Ct. 357, 89 L.Ed. 311 (1945); *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922)). In addition, the Zoning Code provides that the zoning requirements "shall be enforced by the Building Inspector. . . ." (Murphy Aff.Ex. D.) [2]

■ Reading the complaint in a light most favorable to the plaintiffs, it appears that their contention is that, from March 1987 to the present, no abatement or enforcement action was taken by the Ellenville defendants. Thus, a liberal reading of the complaint reveals that the plaintiffs are not seeking to challenge discretionary actions taken by the Ellenville defendants. Rather, the plaintiffs are claiming that these defendants took no action at all to prevent and abate the pollution occurring at ESY despite a duty, pursuant to the Zoning Code, to do so. If the plaintiffs can demonstrate that the Ellenville defendants did not make any effort to enforce the Zoning Code over the approximately

---

**2.** Of specific import to this case are the standards contained in Zoning Code § 227–15 which states as follows:

The following activity standards shall apply in all districts:

A. Vibration. No vibration shall be discernible at the lot lines or beyond

B. Smoke. No emission of visible gray smoke of a shade equal to or darker than Number 2 on the Ringelman Chart, measured at the point of emission.

C. Odors. No offensive odor shall be noticeable at the lot line or beyond.

D. Fly ash, dust. No emission which can cause any damage to health, animals or vegetables or other forms of property or any excessive soiling . . .

F. Liquid or solid wastes. No discharge into any present or future disposal system, public or private, or streams or into the ground of any materials of such a nature or temperature as to contaminate groundwater supply or local watercourses or sewage treatment facilities shall be permitted . . .

H. Noise. No continuous hum, intermittent noise or noise with any noticeable shrillness of a volume of more than fifty (50) decibels, measured at lot lines shall be permitted.

I. Fire and explosive hazard. No process or storage of material in such manner as to create undue hazard by reason of fire or explosion shall be permitted.

J. Storage. No material shall be stored either indoors or outdoors in a manner that facilitates the breeding of vermin . . .

L. Fumes. No toxic or hazardous fumes shall be emitted beyond fully enclosed structures designed to contain and mitigate such fumes.

thirteen year span from March 1987 to the present, they may be able to state a claim under § 1983 for due process violations. Consequently, at this stage in the proceedings, it is premature to dismiss plaintiffs' Fourteenth Amendment claim.

### C. *Municipal Liability*

■ Municipalities are included among those persons to whom § 1983 applies. *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Under New York law, a village is a municipal corporation capable of bringing suit and being sued. *See* N.Y.Gen.Mun.Law § 2 (McKinney 1999). "A police department is an administrative arm of the municipal corporation." *Baker v. Willett*, 42 F.Supp.2d 192, 198 (N.D.N.Y. 1999) (citing *Loria v. Town of Irondequoit*, 775 F.Supp. 599, 606 (W.D.N.Y.1990); *Willard v. Town of Hamburg*, No. 96–CV–0187E(H), 1996 WL 607100, at *1 (W.D.N.Y. Sept.30, 1996)). "A police department cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity." *Id.* (citing *Loria*, 775 F.Supp. at 606; *East Coast Novelty Co. v. City of New York*, 781 F.Supp. 999, 1010 (S.D.N.Y.1992); *Wilson v. City of New York*, 800 F.Supp. 1098, 1101 (E.D.N.Y. 1992)); *see also Clayton v. City of Kingston*, 44 F.Supp.2d 177, 183 (N.D.N.Y. 1999).

Plaintiffs' claims against the Village of Ellenville Police Department and the Village of Ellenville are redundant. Since the police department is merely an administrative arm of the Village, and the Village is the real party in interest here, the claims asserted against the Village of Ellenville Police Department are dismissed. *See Baker*, 42 F.Supp.2d at 198. Accordingly, the remainder of this opinion addresses plaintiffs' municipal liability claims with respect to the Village only.

■ In an action pursuant to § 1983, a municipality may not be held liable on a theory of respondeat superior. *See Thom-*

*as v. Roach*, 165 F.3d 137, 145 (2d Cir. 1999) (citing *Monell*, 436 U.S. at 694, 98 S.Ct. 2018). However, a municipality may be held liable if the conduct that caused the unconstitutional deprivation was undertaken pursuant to

> a policy[,] statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers[,] ... [or] pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels.

*Monell*, 436 U.S. at 690–91, 98 S.Ct. 2018. Some unlawful practices of officials are "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Id.* at 691, 98 S.Ct. 2018.

■ A municipality may be held liable for failure to train its employees "only where the failure to train amounts to deliberate indifference" to the constitutional rights of the municipality's citizens. *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). The failure to train must "reflect[ ] a 'deliberate' or 'conscious' choice by a municipality. *Id.* at 389, 109 S.Ct. 1197. Thus, a municipality may be liable on a claim for failure to train only where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights." *Id.* at 390, 109 S.Ct. 1197.

■ In the present case, the plaintiffs have not alleged a widespread custom or policy of ignoring zoning violations; they have merely alleged that the Ellenville defendants ignored *their* complaints concerning the illegal dumping at ESY. However, plaintiffs' failure to train claim can survive defendants' motion to dismiss. Liberally construing plaintiffs' complaint, they allege that the Village failed to properly train employees on the Zoning Code and their ability to enforce its provisions, thus leading to the incorrect statements made to the plaintiffs that they could do nothing to remedy the situation at ESY.

Assuming the truth of these allegations, the complaint sufficiently states a claim against the Village for failure to train.

### D. *Qualified Immunity*

■ The doctrine of qualified immunity "shields government officials performing discretionary functions from being held liable for civil damages arising from their actions which do 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *P.C. v. McLaughlin,* 913 F.2d 1033, 1039 (2d Cir.1990) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Qualified immunity "affords protection to a government official only from suits in his individual capacity." *Id.* A decision in favor of a public official based on qualified immunity is appropriate if: (1) the conduct attributed to him is not prohibited by federal law, or, if such conduct is so prohibited; (2) if the plaintiff's right not to be subjected to such conduct was not clearly established at the time of the defendant's actions; or (3) if it was not objectively reasonable for the official to know that his conduct violated that right. *See X–Men Sec., Inc. v. Pataki,* 196 F.3d 56, 65–66 (2d Cir.1999).

■ In the instant case, the Zoning Code mandated enforcement of the Village of Ellenville's zoning laws. In light of this mandate, it was not objectively reasonable for the individual Ellenville defendants to believe that since the DEC was purportedly handling the situation at ESY, they were not required to take any action on their own. Consequently, the individual Ellenville defendants are not entitled to qualified immunity.

### E. *Plaintiffs' Negligence Claim*

■ "It is settled law that a municipality cannot be held liable for negligently exercising its governmental functions unless there is proof of the existence of a special duty owing to the persons injured in contrast to a duty owed to the general public." *Bargy v. Sienkiewicz,* 207 A.D.2d 606, 608, 615 N.Y.S.2d 520, 522 (3d Dep't 1994) (citing *Garrett v. Holiday Inns, Inc.,* 58 N.Y.2d 253, 261, 447 N.E.2d 717, 721, 460 N.Y.S.2d 774, 778 (1983); *Florence v. Goldberg,* 44 N.Y.2d 189, 195–96, 375 N.E.2d 763, 766, 404 N.Y.S.2d 583, 586 (1978); *Sanchez v. Village of Liberty,* 42 N.Y.2d 876, 366 N.E.2d 870, 397 N.Y.S.2d 782 (1977); *Helman v. County of Warren,* 111 A.D.2d 560, 489 N.Y.S.2d 430 (3d Dep't 1985), *aff'd,* 67 N.Y.2d 799, 492 N.E.2d 398, 501 N.Y.S.2d 325 (1986)). This special duty can be found "when a special relationship exists between the municipality and an individual or class of persons, warranting the imposition of a duty to use reasonable care for those persons' benefit." *Garrett,* 58 N.Y.2d at 261, 447 N.E.2d at 721, 460 N.Y.S.2d at 778. Establishment of the requisite special relationship required plaintiff to demonstrate four things: (1) that the municipality assumed, through promise or actions, an affirmative duty to act on behalf of the injured party; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) the injured party's justifiable reliance on the municipality's affirmative undertaking. *See Cuffy v. City of New York,* 69 N.Y.2d 255, 260, 505 N.E.2d 937, 940, 513 N.Y.S.2d 372, 375 (1987); *Garrett,* 58 N.Y.2d at 262, 447 N.E.2d at 721, 460 N.Y.S.2d at 778.

Plaintiffs' negligence claim against the Ellenville defendants rests on the allegations that these defendants failed to enforce the Zoning Code against ESY. However, the plaintiffs fail to allege that the Village of Ellenville owed them a special duty to enforce the Zoning Code or that the Village assumed such a duty.

■ Plaintiffs claim that there are two bases to support their negligence claim. In the first situation, the plaintiffs rely upon *Garrett,* 58 N.Y.2d at 262–63, 447 N.E.2d at 721–22, 460 N.Y.S.2d at 778–79,

for the proposition that a special relationship exists where the municipality made active misrepresentations which the injured party relies upon. However, *Garrett* is distinguishable from this case. *Garrett* involved a suit against a motel and the municipality by motel guests injured or killed in a fire. In the decision cited by the plaintiffs,[3] the motel sought contribution from the town on the basis that the town issued a certificate of occupancy despite knowledge of fire and safety code violations. The New York State Court of Appeals held that, despite the absence of a special duty owed by the municipality directly to the injured plaintiffs, the municipality may be held liable to the motel for its proportionate share of damages. *Id.* at 263, 447 N.E.2d at 722, 460 N.Y.S.2d at 779. The Court of Appeals stated

> If, as is alleged in the complaints, known, blatant, and dangerous violations existed on these premises, but the town affirmatively certified the premises as safe, upon which representations appellants justifiably relied in their dealings with the premises, then a proper basis for imposing liability on the town may well have been demonstrated.

*Id.* at 262, 447 N.E.2d at 721, 460 N.Y.S.2d at 779. In the present case, the plaintiffs do not allege that the Ellenville defendants made active misrepresentations as to their ability to remedy the violations at ESY. Rather, the plaintiffs complaint alleges that, due to improper training, the Ellenville defendants did not know they had the authority to investigate and enforce the Zoning Code. Therefore, the plaintiffs' first argument to extend liability to the municipality is rejected.

■ The second scenario which the plaintiffs proffer concerns a municipality's failure to inspect and repair a known dangerous condition. *See DeWitt Properties, Inc. v. City of New York*, 44 N.Y.2d 417,

377 N.E.2d 461, 406 N.Y.S.2d 16 (1978). However, a careful reading of the cases cited by the plaintiffs reveals that the municipality may be liable in this situation only when it owned the premises where the dangerous condition existed. Accordingly, plaintiffs' second argument in support of holding the Village liable for negligence is also rejected, and therefore, plaintiffs' negligence claim against the Ellenville defendants must be dismissed.

## IV. *CONCLUSION*

Accordingly, it is

ORDERED, that

1. The motion to dismiss by defendants Village of Ellenville, Raymond Younger, Michael Mills, Joseph Straub, and the Village of Ellenville Police Department is GRANTED in part and DENIED in part;

2. The defendants' motion is GRANTED to the extent that plaintiffs' RCRA and negligence claims against these defendants, as well as all claims against the Village of Ellenville Police Department, are DISMISSED;

3. The defendants' motion is DENIED in all other respects.

IT IS SO ORDERED.

---

**3.** A prior decision in the *Garrett* case determined that the town did not owe a special duty directly to the hotel guests. *See Garrett v. Town of Greece*, 78 A.D.2d 773, 433 N.Y.S.2d 637 (4th Dep't 1980), *aff'd*, 55 N.Y.2d 774, 431 N.E.2d 971, 447 N.Y.S.2d 246 (1981).