OPINION OF THE COURT
Michael D. Stallman, J.
The City moves for summary judgment; plaintiffs cross-move to amend the complaint to assert breach of a special duty.
Plaintiffs sue the City and their landlord for personal injuries allegedly incurred by Josefina Reyes’s children, who ate lead paint chips in their apartment. Plaintiffs claim, inter alia, that the City was deficient in enforcing lead-poisoning statutes and regulations, including the Federal Lead-Based Paint Poisoning Prevention Act (42 USC § 4822 [LPPPA]).
*868 The City contends that it first became involved in 1996, when its Department of Health learned that Edgar had elevated blood lead levels. (See NY City Health Code [24 RCNY] § 173.13.) The Health Department inspected the apartment and directed the landlord to correct violations. The landlord apparently did not comply. The Health Department notified the City’s Department of Housing Preservation and Development (HPD), which corrected the violations in December 1996.
Plaintiffs allege that the City became involved in July 1995, when HPD’s Office of Code Enforcement inspected the apartment in connection with plaintiffs’ Housing Court proceeding to compel the landlord to make repairs. HPD issued various “immediate hazard” violations, including peeling lead paint, but the landlord allegedly did nothing. Edwin’s elevated lead level was first diagnosed in November 1995, and Edgar’s was first diagnosed in December 1995, several months after HPD issued the lead paint violations. HPD again inspected the apartment in January 1996 and issued more violations, also apparently unheeded. The City continued to send investigators, but it did not itself begin to correct the lead violations until September 1996. Abatement took approximately two months; plaintiffs remained in the apartment. Plaintiffs assert that City inspectors told Reyes not to worry and did not direct her to relocate. Reyes further asserts that City abatement workers did not properly dispose of lead dust, thereby increasing lead levels.
The original complaint contains eight causes of action: (i) violation of Federal law (LPPPA); (ii) failure to enforce local laws; (iii) violation of civil rights (42 USC § 1983); (iv) negligence; (v) negligence per se; (vi) breach of contract and implied warranty of habitability; (vii) nuisance; and (viii) infliction of mental distress. The amended complaint substitutes a new fifth cause of action asserting breach of special duty.
(i) Violation of Federal Law (LPPPA)
Applying the United States Supreme Court’s test in Cort v Ash (422 US 66, 78), there is no private right of action under LPPPA (Santiago v Hernandez, 53 F Supp 2d 264 [ED NY]; see Cardona v 642-652 Willoughby Ave. Corp., 182 Misc 2d 223).
(ii) Failure to Enforce Local Laws
Plaintiffs can prevail in this claim only by proving that the City’s “ ‘disregard of the command of [a] statute result [ed] in damage to one of the class for whose especial benefit the statute was enacted’ ” (New York City Coalition to End Lead *869 Poisoning v Koch, 138 Misc 2d 188, 197, affd 139 AD2d 404, citing Motyka v City of Amsterdam, 15 NY2d 134, 139). However, the City’s only statutory obligation is to enact regulations. Administrative Code of the City of New York § 27-2013 (h), the law in effect when plaintiffs commenced this action, imposed on landlords the affirmative, nondelegable duty to ameliorate a lead-based paint condition, but did not impose a similar duty on the City or its agencies. The law which replaced it in 1999 (Administrative Code § 27-2056.1 et seq.) is arguably less stringent (see New York City Coalition to End Lead Poisoning v Vallone, Sup Ct, NY County, York, J.). Similarly, no private right of action derives from New York City Health Code § 173.13 (Lindsay v New York City Hous. Auth., 1999 WL 104599, 1999 US Dist LEXIS 1893 [ED NY, Feb. 24, 1999, Gleeson, J.]; see Ubiera v Housing Now Co., 184 Misc 2d 846).
(iii) Violation of Civil Rights (42 USC § 1983)
Applying the United States Supreme Court’s three-pronged test in Blessing v Freestone (520 US 329, 340-341) to the lead paint situation, only plaintiffs in subsidized or public housing have a right of action under 42 USC § 1983 (see German v Federal Home Loan Mtge. Corp., 1999 WL 1095595, 1999 US Dist LEXIS 19029 [SD NY, Dec. 2, 1999, Buchwald, J.]; Roman v Morace, 1997 WL 777844, 1997 US Dist LEXIS 19926 [SD NY, Dec. 16, 1997, Cote, J.]). Plaintiffs in private housing cannot state such a claim (see Santiago v Hernandez, 53 F Supp 2d 264, supra).
(iv) Negligence and (v) Negligence Per Se
Plaintiffs may state a negligence claim against the City only by showing breach of a special duty (Sorichetti v City of New York, 65 NY2d 461). The proposed amendment alleges a special duty claim;* the original complaint does not.
Plaintiffs must show that the City undertook a duty owed specifically to them. Such “special” duty goes beyond the municipality’s obligations to the general public; it must be premised on a special relationship between the City and plaintiffs (Florence v Goldberg, 44 NY2d 189, 195; Lee v New York City Tr. Auth., 249 AD2d 93, lv dismissed and denied 92 *870 NY2d 944). A “special relationship” requires four elements: “(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality’s agents that inaction could lead to harm; (3) some form of direct contact between the municipality’s agents and the injured party; and (4) that party’s justifiable reliance on the municipality’s affirmative undertaking” (Cuffy v City of New York, 69 NY2d 255, 260, motion to amend remittitur dismissed 70 NY2d 667). Recent case law emphasizes the last two elements (Lauer v City of New York, 95 NY2d 95, 102).
Plaintiffs claim that the City exceeded its statutory duty by sending monitors to the apartment to inspect the paint and to advise about dealing with hazards, e.g., rinsing food. The monitors allegedly assured plaintiffs that everything would be fine, but did not warn them to vacate. Reyes asserts that she reasonably believed that the monitors were experts, and followed their advice. The City’s acts, including the inspector’s remarks, during the court-mandated and other inspections and followups, are not actionable; they were part of the City’s governmental regulatory function, to which immunity attaches. (See Bargy v Sienkiewicz, 207 AD2d 606.)
However, to the extent that plaintiffs allege that the City chose to undertake the lead abatement itself, and did so negligently during plaintiffs’ occupancy, such allegations, when viewed in a light most favorable to the pleader, on a motion to amend or a prejoinder CPLR 3211 (a) (7) motion, may suffice to show the assumption and breach of a special duty. (See Valencia v Lee, 55 F Supp 2d 122, 133, citing Garrett v Holiday Inns, 58 NY2d 253; see also Bargy v Sienkiewicz, supra; Toribio v City of New York, 2000 WL 690252, *3, 2000 US Dist LEXIS 7259 [SD NY, May 26, 2000, Eaton, J.].) On similar allegations, it was held that the claim’s viability hinged on triable factual questions. (Valdez v MGS Realty & Mgt. Corp., 2000 WL 511024, *10-11, 2000 US Dist LEXIS 5569 [SD NY, Apr. 28, 2000, Kram, J.].)
The City contends that Reyes’s affidavit, the basis of the special duty claim, conflicts with her General Municipal Law § 50-h hearing and deposition. These discrepancies in sworn testimony do raise significant factual questions and credibility issues, but the court may not determine them summarily here,
(vi) Breach of Contract and Implied Warranty of Habitability
A landlord’s duty to keep rental premises in good repair includes lead abatement as required by law (Morales v Felice *871 Props. Corp., 221 AD2d 181). The City has no such contract-based obligation to anyone not its tenant. In performing inspection and enforcement, the City was performing a governmental, not a proprietary function. By effecting abatement, the City did not become vicariously liable for the landlord. It was carrying out its own statutory responsibilities, not stepping into the landlord’s shoes.
(vii) Nuisance
Irrespective of the viability of a nuisance claim against a landlord (see Rosario v Koss, 26 AD2d 561, 562; cf. Wall St. Transcript Corp. v 343 E. 43rd St. Holding Corp., 81 AD2d 783), it is not viable against the City, which did not own, finance or provide plaintiffs with their apartment (see Valencia v Lee, supra).
(viii) Infliction of Mental Distress
The circumstances alleged do not amount to a deliberate and malicious campaign of harassment or intimidation. (Vasarhelyi v New School for Social Research, 230 AD2d 658.)
Conclusion
Accordingly, plaintiffs’ cross motion to amend the complaint is granted. The City’s motion for summary judgment is granted dismissing all claims originally pleaded against the City.
[Portions of opinion omitted for purposes of publication.]

 Plaintiffs’ notice of claim clearly states that the City owed plaintiffs a special duty and breached it. Any factual omissions from plaintiffs’ bill of particulars may be remedied through service of an amended bill of particulars. Because the City has not yet interposed an answer to this claim (see CPLR 3212 [a]; Kantor v Bernstein, 225 AD2d 500, 502), the court must deem all allegations pleaded to be true and accord plaintiff every favorable inference (344 E. 72 Ltd. Partnership v Dragatt, 188 AD2d 324).