GERALD B. BERLINER, as Executor of TINA M. BERLINER, Deceased, Appellant, v BRITT THOMPSON et al., Appellants, and TOWN OF COLONIE POLICE DEPARTMENT et al., Respondents.

Third Department, May 2, 1991

APPEARANCES OF COUNSEL

*Powers & Santola (Michael J. Hutter* of counsel), for Gerald B. Berliner, appellant.

*Maynard, O'Connor & Smith (Christine Kirwin Krackeler* of counsel), for respondents.

## OPINION OF THE COURT

CREW III, J.

Decedent and Robert Berliner were married in 1982 and separated in 1985. After their separation, decedent resided in Saratoga County with plaintiff and his wife who were decedent's in-laws. On September 30, 1985 and again a week later, Berliner assaulted decedent, as the result of which she was issued an order of protection from Saratoga County Family Court on October 11, 1985. On October 14, 1985 decedent went to the Community Health Plan (hereinafter CHP) offices located in the Town of Colonie, Albany County, in order to obtain medical treatment. Upon leaving CHP, she was confronted by Berliner, who persuaded her to give him a ride to a

motel where he again assaulted her and attempted to drag her into a room. After a struggle, decedent ran to the motel lobby where a police officer from defendant Town of Colonie arrived and spoke with decedent and two witnesses. Upon advising the officer of her order of protection, decedent was followed by the police officer to the Saratoga County line; from there a Saratoga County Sheriff's Deputy followed her home so that she could obtain the order of protection for defendant Town of Colonie Police Department (hereinafter the police department).

Decedent thereafter drove to the police department and was assisted by Detective Robert Lynch. She advised Lynch of the assault earlier that day and displayed her order of protection. Lynch also observed decedent's black eye, which she advised had been the result of an earlier assault by Berliner. While at the police department decedent signed a complaint which, by its terms, requested the arrest of Berliner for assault. Additionally, decedent was told by Lynch that he needed medical verification of her injuries to substantiate the assault complaint, and she agreed to obtain the same. On October 15, 1985 decedent obtained medical verification from CHP and delivered it to the police department.

The assault complaint was never presented to a Town Justice, a warrant of arrest was never issued and consequently Berliner was not arrested. The following day Berliner entered the home of his parents and fatally stabbed decedent. Plaintiff commenced the instant action against, among others, the town and the police department (hereinafter collectively referred to as defendants) for decedent's conscious pain and suffering and wrongful death. Defendants moved for summary judgment dismissing the complaint and all cross claims against them on the ground that plaintiff failed to establish a "special duty" owing to decedent by defendants, as the result of which defendants were immune from suit. Supreme Court granted the motion and this appeal ensued.*

It is well settled that a municipality may not be held liable for personal injuries resulting from its failure to provide police protection to a specific member of the public *(Riss v City of New York,* 22 NY2d 579). However, liability may result based upon a municipality's negligent failure to provide police

---

* It should be noted that this court has previously upheld the denial of a motion for summary judgment made by the Saratoga County Sheriff's Department and the two Deputy Sheriffs sued in this action (149 AD2d 887).

protection where a special relationship has developed between the municipality and the particular citizen as a result of which a special duty to that citizen arises *(Sorichetti v City of New York,* 65 NY2d 461). In order to establish such a special relationship, four elements must exist: "(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking" *(Cuffy v City of New York,* 69 NY2d 255, 260).

■ With regard to the first element, it may well be inferred in this case that defendants assumed, through their actions, an affirmative duty to act on behalf of decedent. The police department responded to the October 14, 1985 assault, accompanied decedent to the county line so that she could obtain a copy of her order of protection and prepared an assault complaint for the purpose of obtaining a warrant of arrest of Berliner. Additionally, the police department directed decedent to obtain medical verification of her injuries in order to support the complaint, which she did. On the other hand, there is no evidence that the police department assured decedent of immediate action and, in fact, they advised her to report the incident to the Family Court of Saratoga County or the Saratoga County Sheriff's Department. Under these circumstances, it is clear that contrary inferences may reasonably be drawn concerning the assumption of a duty to act which presents triable issues of fact not determinable on a motion for summary judgment *(see, Gerard v Inglese,* 11 AD2d 381, 382).

■ As to the second element, the police department knew or should have known that their inaction could lead to harm, being aware of the assault which they were investigating as well as the prior assaults which led to the issuance of the order of protection. With regard to that order of protection, which was exhibited to the police at their request, it has been held that such an order: "evinces a preincident legislative and judicial determination that its holder should be accorded a reasonable degree of protection from a particular individual. It is presumptive evidence that the individual whose conduct is proscribed has already been found by a court to be a dangerous or violent person and that violations of the order's

terms should be treated seriously" *(Sorichetti v City of New York, supra,* at 469-470). As to the third element, it is uncontroverted that there was direct contact between decedent and the police.

The more perplexing issue is whether plaintiff has raised a triable issue of fact as to the fourth element. Essential to plaintiff's right to recovery is proof that decedent relied on defendants' actions and that her reliance was causally related to the harm she suffered *(see, Cuffy v City of New York,* 69 NY2d 255, 258, *supra).* By reliance we do not mean that, in the ordinary sense, decedent was hopeful or that she genuinely believed that the police would apprehend her husband. The thread that runs through the cases analyzing this critical element "is the unfairness that the courts have perceived in precluding recovery when a municipality's voluntary undertaking has lulled the injured party into a false sense of security and has thereby induced [her] either to relax [her] own vigilance or to forego other available avenues of protection" *(supra,* at 261). As to the latter concern, there can be little doubt that decedent was not lulled into foregoing other avenues of protection. Her mother-in-law testified to and identified a note that decedent wrote which indicated that she intended to call personnel at the Saratoga County Family Court concerning this incident on the very day that she was murdered. As to the former concern, however, a very real issue is presented. Defendants urge, as Supreme Court found, that the fact that decedent did not appear to have acted differently after leaving the police station on October 15, 1985 than she would otherwise have acted during the course of her normal daily routine demonstrates her lack of reliance. While this may be so, it is equally arguable that she did not alter her regular routine for the very reason that she had justifiably relied on defendants to obtain and execute a warrant of arrest and believed that they had done so. Again, where contrary inferences may reasonably be drawn from undisputed facts, triable issues are presented which cannot be resolved on a motion *(see, Gerard v Inglese,* 11 AD2d 381, *supra).* While this evidence may be said to be slight and is clearly circumstantial, when viewed under the rule established in *Noseworthy v City of New York* (298 NY 76, 80) that in "a death case a plaintiff is not held to as high a degree of proof", a triable issue of fact is raised and it is clear that the *Noseworthy* doctrine is applicable to cases of this sort *(see, De Long v County of Erie,* 60 NY2d 296, 306). Accordingly, we

find that issues of fact exist which preclude a grant of summary judgment.

MAHONEY, P. J., WEISS, MIKOLL and HARVEY, JJ., concur.

Order reversed, on the law, without costs, and motion denied.