[633 NYS2d 858]

LAURIE E. MELANSON, Appellant, v STATE OF NEW YORK, Respondent.

Third Department, November 22, 1995

## APPEARANCES OF COUNSEL

*Donohue, Sabo, Varley & Armstrong,* Albany *(Christine M. D'Addio* of counsel), for appellant.

*Dennis C. Vacco, Attorney-General,* Albany *(Vernon Stuart* of counsel), for respondent.

## OPINION OF THE COURT

WHITE, J.

After claimant terminated their relationship, John Brown began to stalk her and subject her to escalating acts of physical violence. This conduct culminated on August 11, 1986 in claimant's apartment located in the Village of Indian Lake, Hamilton County, when Brown shot claimant in the head, raped her and then committed suicide. Thereafter, claimant commenced this personal injury action which, at the conclusion of a trial limited to the issue of liability, the Court of Claims dismissed, finding that claimant had not shown there was a "special relationship" created between her and the State. This appeal ensued.

The prelude to the tragic events of August 11, 1986 occurred three days earlier on August 8. On that day when claimant entered her apartment at about 11:30 P.M., she found Brown there. He slapped her and then gave her some tea which apparently was adulterated with a drug, since claimant remembered nothing else until she was awakened the next day by her sister's knocking at her door, at which time she discovered that she was naked. After claimant went to bed on August 9, 1986, she was awakened by the noise of a window being lifted. When she called to her sister, who was staying with her in the apartment that evening, the intruder, whom she believed was Brown, fled. Claimant then tried to call the State Police; however, their phone was not answered due to the fact that a telephone diverter system designed to transfer calls from the Indian Lake State Police Substation to the Ray Brook State Police Substation had been disconnected. Eventually, she contacted the State Police through the operator.

A State Trooper arrived at her apartment at about 11:00

P.M., and told her that he could not arrest Brown for the attempted break-in since neither claimant nor her sister could positively identify him. After advising claimant that she could file a complaint regarding the August 8, 1986 incident, but that it could not be done at that time since it was too late to wake the Judge, the Trooper informed claimant that he would watch the apartment during the night and send someone around in the morning to take her complaint.

Because the State Police did not come to her apartment during the morning of August 10, 1986, claimant and her sister unsuccessfully attempted to call them. They also drove to the Indian Lake Substation but found it unmanned. Claimant's sister then went home and, later that day, claimant went to a friend's house for dinner. While there, at about 5:00 P.M., she saw Brown speed past in his vehicle. Claimant next saw Brown when she returned to her apartment a little after midnight on August 11, 1986 when he stepped from the shower in her bathroom and shot her.

A governmental entity may be held liable for the negligent performance of a governmental function, such as the failure to provide police protection, where a "special relationship" was created between it and the injured party (see, Pike v State of New York, 214 AD2d 934, 935, lv dismissed and denied 86 NY2d 811; Dawson v New York City Hous. Auth., 203 AD2d 55). Among the elements of a "special relationship" are the assumption by the governmental entity, by promise or action, of an affirmative duty to act on behalf of the injured party and the injured party's justifiable reliance on that undertaking (see, Cuffy v City of New York, 69 NY2d 255, 260). As we agree with the Court of Claims that the State Police undertook an affirmative duty to act on claimant's behalf, the critical issue is whether claimant established that she justifiably relied on such undertaking.

On the issue of reliance, this case is similar to Cuffy v City of New York (supra), which grew out of a landlord-tenant dispute. There, in response to the landlord's statement that he was going to immediately move his family, the police told him not to worry since the tenant would be arrested or something else done about the situation the " 'first thing in the morning' " (supra, at 259). Nothing was done and by midday the landlord's wife knew that the police had not arrested the tenant or otherwise restrained him as had been promised (supra, at 263). The Court of Appeals found that, although the plaintiffs may have remained in their apartment overnight in

justifiable reliance on the police promises, that reliance dissipated by midday when they were aware that the police had taken no action *(supra,* at 263-264; *see also, Bain v City of Rochester,* 115 AD2d 957, *lv denied* 67 NY2d 606; *Yearwood v Town of Brighton,* 101 AD2d 498, *affd* 64 NY2d 667).

Likewise, in this case claimant was aware by midday on August 10, 1986 that the police had not responded as promised and knew by 5:00 P.M. that Brown had not been arrested. Therefore, as in *Cuffy,* any reliance claimant placed on the Trooper's promise had dissipated by the early evening of August 10, 1986. Thus, there was no causal connection between the "special duty" assumed by the State Police and claimant's injury *(see, Kircher v City of Jamestown,* 74 NY2d 251, 258). Accordingly, the Court of Claims properly dismissed the claim predicated upon the alleged breach of the "special duty" that the police owed claimant.

The absence of a "special relationship" is also fatal to claimant's theory that liability attaches to the State in light of the negligence of the State Police in maintaining the telephone diverter system at the Indian Lake Substation since the establishment and maintenance of such a system is a governmental function *(see, Bogart v Town of New Paltz,* 145 AD2d 110, 112, *lv denied* 74 NY2d 608; *Helman v County of Warren,* 111 AD2d 560, 561, *affd* 67 NY2d 799).

For these reasons, we affirm the judgment of the Court of Claims.

MERCURE, J. P., CASEY, PETERS and SPAIN, JJ., concur.

Ordered that the judgment is affirmed, without costs.