[720 NYS2d 214]

Bruce Grieshaber, as Administrator of the Estate of Jenna G. Honis, Deceased, Respondent, v City of Albany, Appellant.

Third Department, January 25, 2001

**APPEARANCES OF COUNSEL**

*Brennan, Rehfuss & Liguori, P. C.,* Albany (*Stacey A. Hamilton* of counsel), for appellant.

*Michael J. Hutter,* Albany, for respondent.

**OPINION OF THE COURT**

MERCURE, J. P.

This action arises out of the tragic death of Jenna Grieshaber Honis (hereinafter decedent), who was murdered in her basement apartment in the City of Albany on the evening of November 6, 1997. The theory of the complaint is that defendant was negligent in its response to an emergency 911 telephone call that decedent made at 6:47 P.M. on that day. Although police officers arrived at decedent's apartment building

at 6:52 P.M., they awaited the arrival of an animal control officer to subdue decedent's dog. As a result, they did not actually enter decedent's apartment until approximately 7:45 P.M., at which time they found her lying on the floor with a bedpost of a heavy wooden bed resting on her neck. Decedent was ultimately transported to a nearby hospital emergency room, where she was pronounced dead at 8:31 P.M. The autopsy report indicates that the cause of death was asphyxiation due to compression of decedent's neck.

Following joinder of issue, defendant moved for summary judgment dismissing the complaint upon the ground that plaintiff was unable to prove the existence of a "special relationship" between decedent and defendant. Plaintiff opposed the motion with evidence that decedent had made 911 calls on two or three prior occasions, an affidavit of Tracilia Smith, the 911 operator who took decedent's November 6, 1997 call, and an affidavit of forensic psychologist Charles Ewing, who opined that decedent had placed the emergency 911 telephone call "with a reasonable expectation that by doing so assistance would be dispatched and arrive." Finding that the affidavits submitted by Smith and Ewing raised issues of fact as to whether defendant made assurances that were relied upon by decedent, Supreme Court denied the motion. Defendant appeals.

Regrettably, we are constrained to reverse Supreme Court's order, grant summary judgment in favor of defendant and dismiss the complaint. Because the proper allocation of public resources and available police services is a matter for the executive and legislative branches to decide (*see, Riss v City of New York*, 22 NY2d 579, 581-582), the general rule has developed that a municipality cannot be held liable for negligence in the performance of police protection functions (*see, id.*; *see also, Kircher v City of Jamestown*, 74 NY2d 251, 256; *Cuffy v City of New York*, 69 NY2d 255, 260). An important exception, and the one plaintiff seeks to employ here, applies in the case where a "special relationship" is shown to have existed between the municipality and the injured party. "The elements of this 'special relationship' are: (1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking [citations omitted]" (*Cuffy v City of New York, supra,* at 260).

■ We have no disagreement with Supreme Court's conclusion that plaintiff opposed the summary judgment motion with competent evidence sufficient to raise a factual issue with regard to the first three of those elements. As a threshold matter, we reject defendant's contention that an available audiotape of decedent's 911 call to Smith constitutes the best evidence of that conversation and that Smith's affidavit is therefore inadmissible. Where, as here, a party seeks to prove the content of a conversation, which is a fact existing independently of an available recording of that conversation, an individual who heard the conversation may testify as to its content despite the existence of the tape recording (*see*, *People v Torres*, 118 AD2d 821, 822, *lv denied* 68 NY2d 672). Of course, any inconsistency between the witness's recollection of the conversation and the actual tape recording raises a question of fact for resolution by the jury (*see*, *Vasilatos v Chatterton*, 135 AD2d 1073, 1074).

■ Turning now to the merits, we conclude that Smith's statement that she told decedent that "help was on the way," as well as the fact that defendant actually dispatched several police units to decedent's residence, evidence defendant's assumption of an affirmative duty to act on decedent's behalf. Further, the record provides ample evidence of defendant's knowledge that inaction on its part could lead to harm to decedent. Smith's affidavit indicates that within seconds of decedent's call, the communication was categorized as "OPEN LINE, WOMAN SCREAMING," and defendant's immediate dispatch of multiple police units is clearly indicative of its knowledge of the seriousness of the threat to decedent. Defendant makes no argument that plaintiff did not succeed in raising a question of fact concerning the third element, bringing us then to the fourth, and clearly most burdensome, element.

Providing the essential causative link between the "special duty" assumed by the municipality and the alleged injury, the "justifiable reliance" requirement goes to the very heart of the special relationship exception, which is predicated in large measure on "the unfairness that the courts have perceived in precluding recovery when a municipality's voluntary undertaking has lulled the injured party into a false sense of security and has thereby induced [her] either to relax [her] own vigilance or to forego other available avenues of protection" (*Cuffy v City of New York, supra*, at 261; *see*, *De Long v County of Erie*, 60 NY2d 296, 305; *Berliner v Thompson*, 166 AD2d 78, 82). Indeed, "when the reliance element is either not present at

all or, if present, is not causally related to the ultimate harm, this underlying concern is inapplicable, and the invocation of the 'special duty' exception is then no longer justified" (*Cuffy v City of New York, supra,* at 261). Significantly, in order to satisfy the fourth element, plaintiff's reliance must have placed her in a worse position than she would have been in had the municipality never assumed the duty (*see, Helman v County of Warren,* 111 AD2d 560, 561, *affd* 67 NY2d 799).

Of course, it is impossible for a person who has been deprived of any realistic opportunity to choose between alternative "avenues of protection" to detrimentally rely upon a municipality's promise of assistance. Recognizing that fact, plaintiff theorizes that the evidence presented on the summary judgment motion raises a triable issue of fact as to whether decedent responded to defendant's representation that help was on its way by simply relaxing her vigilance and not engaging in any defensive conduct toward her assailant (*cf., Berliner v Thompson, supra,* at 82). Plaintiff points to no evidence adduced on the summary judgment motion or reasonable inferences to be drawn therefrom that would support such a scenario, however, and our own independent review discloses none. To the contrary, the evidence leads to the conclusion that decedent was already at the mercy of her attacker when she made the emergency 911 call and that she offered earnest resistance to the attack, but was subdued and rendered immobile or unconscious by the assailant. Because the record undeniably reveals that decedent was engaged in a struggle with her assailant before, during and after the 911 call, we are constrained to find that decedent's 911 conversation with Smith did not induce her "either to relax [her] own vigilance or to forego other available avenues of protection" (*Cuffy v City of New York, supra,* at 261).

According to Smith's affidavit, when she answered the 911 call, decedent was "screaming horribly for help" and Smith could hear scuffling noises and decedent screaming "Get Out, Get Out" to another person in the room. Based upon her experience, training and education, Smith formed the opinion that at the time she made the 911 call, decedent "was experiencing a violent physical attack on her person by another individual in the room, and that the individual was threatening to her." In addition, the record shows that at the time decedent's apparent assailant was taken into custody, he had lacerations to the fingers on his right hand, scratches on his side and an abrasion to his shoulder/chest area. Further support for the

view that decedent did not forego the opportunity for flight is provided by a written statement given to the police by decedent's assailant, which was among the documents submitted by plaintiff in opposition to the summary judgment motion. According to the assailant, he went to visit decedent at approximately 6:30 P.M., became involved in a physical altercation with her and exited the apartment through a front window immediately after he heard the answering machine "going off" and a female voice on it "saying that she was calling about the complainant because some one had called 911 from this apartment."*

Even if plaintiff were entitled to the benefit of the *Noseworthy* doctrine (*see, Noseworthy v City of New York*, 298 NY 76), an issue that we need not decide, the foregoing evidence does not bring the present case within the facts of *De Long v County of Erie* (*supra*). There, the assailant was outside the victim's home at the time she made an emergency 911 call, and 13 minutes passed from the time of that call to the time she was found running from her house, unclothed and bleeding profusely (*id.*, at 300-301). Citing to the 911 operator's assurance that help would be there "right away," the fact that the victim's house was merely a block and a half from the local police station and that the victim *was not yet at the mercy of the intruder*, the Court of Appeals concluded that "it cannot be said as a matter of law that this assurance played no part in her decision to remain in her home and not seek other assistance. Unfortunately, it only increased the risk to her life" (*id.*, at 305).

Here, in sharp contrast, decedent was already undergoing an assault at the time she placed the initial 911 call, and the record provides no basis for a finding that decedent forwent any available avenues of escape on the basis of the assurances that were purportedly made to her by Smith. Under the circumstances, the evidence offered by plaintiff for the purpose of establishing decedent's reasonable expectation that help would be forthcoming is insufficient. Although we are troubled by the conduct of the police in allowing a prolonged delay to occur before entering decedent's apartment, the Court of Appeals has made clear that a plaintiff cannot establish justifiable reliance by demonstrating a victim's reasonable expectation that help would be forthcoming, as plaintiff's burden is to come forward with competent evidence to support a finding that decedent

---

* Police records indicate that this call was made at 7:08 P.M.

acted on that reliance to her detriment (*see, Kircher v City of Jamestown, supra,* at 258-259; *Helman v County of Warren, supra,* at 561; *Yearwood v Town of Brighton,* 101 AD2d 498, 502, *affd* 64 NY2d 667). This he could not do.

The parties' remaining contentions either have been considered and found to be unavailing or need not be considered.

CREW III, MUGGLIN, ROSE and LAHTINEN, JJ., concur.

Ordered that the order is reversed, on the law, without costs, motion granted, summary judgment awarded to defendant and complaint dismissed.