■ DIANE CLARK, Respondent, v TOWN OF TICONDEROGA et al., Appellants. [737 NYS2d 412] —Mercure, J.P. Appeal from an order of the Supreme Court (Dawson, J.), entered March 29, 2001 in Essex County, which denied defendants' motion for summary judgment dismissing the complaint.

Plaintiff brought this action to recover for injuries she sustained at the hand of her estranged husband, Edward Clark, on August 7, 1999, allegedly due to the failure of defendants Town of Ticonderoga, Town of Ticonderoga Police Department and certain of its police officers to provide adequate police protection. In an effort to avoid the operation of the general rule that a municipality may not be held liable for injuries resulting from a failure to provide police protection (*see, Mastroianni v County of Suffolk*, 91 NY2d 198, 203), plaintiff asserts the existence of a "special relationship," which imposes on her the burden of establishing (1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on her behalf, (2) knowledge on the part of the municipality's agents that inaction could lead to harm, (3) some form of direct contact between the municipality's agents and plaintiff, and (4) plaintiff's justifiable reliance on the municipality's affirmative undertaking (*see, Cuffy v City of New York*, 69 NY2d 255, 260).

The evidence adduced on defendants' summary judgment motion establishes that between July 20, 1999 and the time of the August 7, 1999 attack, there were a series of events involving plaintiff, Clark and Town of Ticonderoga police officers. On July 20, 1999, Clark ordered plaintiff out of the marital resi-

dence and told her that he would kill her when she returned home from work that night. When she was finished at work, plaintiff went to the police station, informed defendant Dan Charlton of Clark's threat against her and requested police protection while she went back to her home and got her children. Two police officers accompanied plaintiff to her home while she picked up her three children and some of their belongings and took them to the residence of her friend, Ann Du Ross. On July 23, 1999, Clark went to the Du Ross residence and struck plaintiff. The police were called and plaintiff signed a written complaint. A charge of harassment in the second degree was filed against Clark and a temporary order of protection was issued by a local criminal court. Then, on July 26, 1999, when defendant R. Stephen Yaw, a town police officer, delivered a copy of the temporary order of protection to plaintiff, plaintiff told Yaw that she would be moving into her own apartment on August 6, 1999 and asked if he would ride by and keep an eye on her. He replied, "yep, we will keep an eye on you."

The next incident took place on July 31, 1999, when Clark went to plaintiff's workplace in an agitated state, forced her up against a building and tried to kiss her. Plaintiff managed to escape and later, after she returned to the Du Ross residence and summoned the police, Clark drove up in his truck and began shouting at her. After calling for backup, the police accompanied Clark to the police station and charged him with criminal contempt in the second degree as a result of his violation of the terms of the temporary order of protection. Clark was not arraigned on that charge until August 2, 1999, at which time he was released on his own recognizance. During the week of August 1, 1999 through August 7, 1999, plaintiff had several contacts with Yaw, who periodically came to or drove by her workplace in order to check on her. Plaintiff's August 6, 1999 move to her new apartment took place without incident, but when plaintiff was driving home from work the following night, she saw Clark's truck parked at a nearby bar. When she got inside her apartment, she locked up all the windows and doors. She did not call the police because, as she testified at the General Municipal Law § 50-h hearing, they would have told her that Clark "wasn't doing anything [and] they can't just baby-sit him." Tragically, Clark arrived shortly thereafter, knocked down the front door and, in the presence of their children, repeatedly stabbed plaintiff with a knife.

It is essentially conceded that plaintiff's evidentiary showing satisfied the first three of the *Cuffy* requirements, and our

analysis will therefore focus on the fourth, and clearly most burdensome, element: plaintiff's justifiable reliance on the municipality's undertaking (*see, Grieshaber v City of Albany*, 279 AD2d 232, 235, *lv denied* 96 NY2d 719). In our consideration of the fourth of the *Cuffy* elements, we recently stated: "Providing the essential causative link between the 'special duty' assumed by the municipality and the alleged injury, the 'justifiable reliance' requirement goes to the very heart of the special relationship exception, which is predicated in large measure on 'the unfairness that the courts have perceived in precluding recovery when a municipality's voluntary undertaking has lulled the injured party into a false sense of security and has thereby induced [her] either to relax [her] own vigilance or to forego other available avenues of protection' " (*id.* at 235, quoting *Cuffy v City of New York, supra* at 261). The "reliance" that is required is not an abstract one that can be satisfied by evidence of plaintiff's hope or even belief that defendants could provide her with adequate police protection (*see, Berliner v Thompson*, 166 AD2d 78, 82). To the contrary, it is plaintiff's burden to show that defendants' conduct actually lulled her into a false sense of security, induced her to either relax her own vigilance or forego other avenues of protection, and thereby placed her in a worse position than she would have been in had they never assumed the duty (*see, Grieshaber v City of Albany, supra* at 235-236; *Berliner v Thompson, supra* at 82).

In our view, that burden was not satisfied in this case. Significantly, from August 2, 1999, when Clark was released on his own recognizance on the charge of criminal contempt in the second degree, to the time of the August 7, 1999 attack, the situation was essentially static. That is, from and after August 2, 1999, plaintiff was aware that (1) Clark was at large in the community, (2) the police were powerless to take any action against Clark unless he further violated the order of protection or committed some independent crime, and (3) plaintiff could expect no police protection beyond the officers' intermittent conduct of "keeping an eye" on her. Although plaintiff carried through on her plan of moving out of the Du Ross residence and into her own apartment on August 6, 1999, she did so with full knowledge and appreciation of those three operative facts.

Apparently recognizing that the record contains no evidence of plaintiff's justifiable reliance between August 2, 1999 and August 7, 1999, plaintiff has chosen instead to propound the wholly unsupported legal argument that satisfying the first three of the *Cuffy* elements will automatically create a triable issue of fact on the fourth and, further, to focus her factual

analysis on the events of July 31, 1999 when, she asserts, defendants erred in failing to ensure Clark's lengthy incarceration by charging him with multiple felony offenses. We are not persuaded. First, as was made clear in *Grieshaber v City of Albany (supra)*, a plaintiff's failure to make a competent evidentiary showing on the element of justifiable reliance will support an award of summary judgment in favor of the municipality even when the first three of the *Cuffy* elements have been satisfied as a matter of law. Second, even if we were to accept the unpersuasive argument that Clark's conduct on July 31, 1999 would have supported one or more felony charges, plaintiff's analysis in any event fails to recognize that the ultimate decision to release a criminal defendant on bail or recognizance is a judicial one, beyond the control of police agencies or officers. Finally, the legal authority relied upon by plaintiff is factually dissimilar and, in our view, provides no competent support for the conclusion that the evidence adduced on the summary judgment motion was sufficient to raise a question of fact concerning plaintiff's justifiable reliance.

Because we are constrained to the conclusion that plaintiff was unable to oppose defendants' summary judgment motion with competent evidence raising a question of fact as to her justifiable reliance on any assurances made by defendants, we have no alternative but to reverse Supreme Court's order and grant defendants' motion.

Crew III, Spain, Carpinello and Rose, JJ., concur. Ordered that the order is reversed, on the law, without costs, motion granted, summary judgment awarded to defendants and complaint dismissed.