■ VINCENT C. FINCH, Appellant, v COUNTY OF SARATOGA, Respondent. [758 NYS2d 220] —Crew III, J. Appeal from an order of the Supreme Court (Nolan, Jr., J.), entered March 28, 2002 in Saratoga County, which granted defendant's motion for summary judgment dismissing the complaint.

Plaintiff commenced this action against defendant seeking to recover for injuries sustained when he was shot by Bruce Mosher in the Town of Corinth, Saratoga County, on December 22, 1995. Plaintiff's theory of the case was that defendant— more specifically, the Saratoga County Sheriff's Department— failed to adequately protect plaintiff from Mosher despite being advised on a number of occasions that Mosher was stalking and harassing him. Following joinder of issue and discovery, defendant moved for summary judgment dismissing the complaint contending that plaintiff had failed to establish the existence of the special relationship necessary to impose liability upon defendant. Supreme Court granted defendant's motion, and this appeal by plaintiff ensued.

Accepting plaintiff's allegations as true, as we must on defendant's motion for summary judgment (see Wenger v Goodell, 288 AD2d 815, 817 [2001], lv denied 98 NY2d 605 [2002]), the record establishes the following. In the fall of 1995, plaintiff, Christine Kelsey (plaintiff's girlfriend) and Donna Blake (Kelsey's sister), together with Blake's and Kelsey's respective children, were residing in a trailer with Mosher, who was at the time Blake's boyfriend. Difficulties between Blake and Mosher apparently ensued, prompting Blake to terminate the relationship and move into an apartment with plaintiff, Kelsey and the children. Mosher, furious at Blake for leaving, thereafter began stalking, harassing and threatening the group.

On December 2, 1995, plaintiff and Blake went to Mosher's trailer to retrieve Blake's car. Upon arriving, they discovered that the car had been towed from the property to a public road, sustaining extensive damage to the body and the transmission in the process. Plaintiff called the Saratoga County Sheriff's Department and Deputy Edward Scalo responded. According to plaintiff, in addition to providing Scalo with the necessary information regarding the damaged vehicle, Scalo was advised that Blake recently had terminated her relationship with Mosher, that Mosher kept a loaded shotgun in his vehicle and that Mosher had shot and killed Kelsey's dog. Additionally, Scalo was shown a newspaper account of another incident

wherein Mosher had damaged a former girlfriend's car. Noting Blake's expressed fear of Mosher, plaintiff requested that the group be provided with an order of protection, which Scalo indicated was not possible at that time. At the conclusion of this conversation, Scalo purportedly promised Blake and plaintiff that Mosher would be arrested and that they would be protected. Finally, Scalo allegedly advised that the Sheriff's Department would handle the situation with Mosher and that plaintiff and Blake should not contact any other police agency should additional problems arise.

During the course of the next three weeks, Mosher continued to harass and threaten the group and, as a result, Blake placed additional calls to the Sheriff's Department reporting Mosher's behavior. Matters came to a head on the morning of December 22, 1995 when Mosher attempted to run down plaintiff with a motor vehicle as plaintiff exited his apartment to go to work. Kelsey apparently reported this incident to the local authorities. Mosher continued to be seen around plaintiff's apartment throughout the day and made various verbal threats to the group as he drove by. Finally, at approximately 4:00 P.M., Blake contacted the Sheriff's Department, indicated that the group was afraid that Mosher would harm them and requested that a deputy be dispatched to investigate. Blake was advised that a deputy would be there within the hour. Plaintiff was present for and overheard Blake's end of this conversation.

Blake and Kelsey thereafter left the apartment and walked a few doors down to a local laundromat, while plaintiff remained at the apartment to await the arrival of the deputy. At 6:00 P.M., when the deputy still had not arrived, plaintiff left the apartment and went to the laundromat to check on Blake and Kelsey. Shortly thereafter, Mosher entered the laundromat, said, "Merry Christmas, you're dead," pulled out his shotgun and killed Blake and seriously wounded plaintiff before shooting himself to death.

The case law makes clear that a municipality cannot be held liable for injuries resulting from the failure to provide adequate police protection unless a special relationship existed between the municipality and the injured party (*see Mastroianni v County of Suffolk,* 91 NY2d 198, 203 [1997]). In order to demonstrate the existence of such a relationship, the injured party must show: "(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3)

some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking" (*Cuffy v City of New York,* 69 NY2d 255, 260 [1987]). Based upon our review of the record as a whole, we are satisfied that, at the very least, a triable issue of fact exists as to the first three elements of the special relationship test. We therefore turn our attention to the more problematic fourth element—justifiable reliance.

As this Court recently reiterated, the "reliance" required in this context is not an abstract element that may be satisfied by the plaintiff's hope or belief that the defendant could provide adequate police protection (*see Clark v Town of Ticonderoga,* 291 AD2d 597, 599 [2002], *lv denied* 98 NY2d 604 [2002]). Rather, as applied to the matter before us, it was plaintiff's burden to demonstrate that defendant's conduct lulled him into a false sense of security, induced him to either relax his own vigilance or forego other viable avenues of protection, and thereby placed himself in a worse position than he would have been in had defendant never assumed the underlying duty (*see id.* at 599; *Grieshaber v City of Albany,* 279 AD2d 232, 236 [2001], *lv denied* 96 NY2d 719 [2001]). In our view, plaintiff failed to meet that burden here.

To the extent that plaintiff seeks to rely upon Scalo's December 2, 1995 promise that Mosher would be arrested and that he, Kelsey and Blake would be protected, any reasonable reliance that plaintiff may have had surely dissipated by the time of the fatal shooting incident 20 days later (*see e.g. Melanson v State of New York,* 215 AD2d 43, 46 [1995], *lv denied* 87 NY2d 810 [1996]). In the interim, Mosher continued to stalk and harass plaintiff and the others, thereby making it readily apparent that Scalo and the Sheriff's Department indeed had not made good on their promises to arrest Mosher and/or curtail his behavior.* Nor are we persuaded that plaintiff reasonably could have relied upon the December 22, 1995 promise to Blake to "send a deputy within the hour" to take a report of Mosher's continued harassment. Assuming, without deciding, that such promise extended to plaintiff, we note that when the deputy did not arrive as promised, plaintiff failed to contact the Sheriff's Department to inquire as to the deputy's anticipated time of arrival or to request additional assistance. Plaintiff also did not seek assistance from any other law

---

* Although plaintiff did not seek assistance from other law enforcement agencies during this time period, we note that Kelsey did contact the local authorities on the morning of the fatal incident in response to Mosher's attempt to strike plaintiff with a motor vehicle.

enforcement agency. Rather, plaintiff took it upon himself to leave the relative safety of his home (*compare Greishaber v City of Albany, supra*) and, despite his expressed fear of Mosher, go to the laundromat to check on Blake and Kelsey, where he ultimately encountered Mosher and was shot.

Although plaintiff's actions in this regard could be considered gallant, and while it is apparent that plaintiff's situation deteriorated rapidly upon his arrival at the laundromat, the fact remains that plaintiff voluntarily placed himself in a worse position than he was in while he was awaiting the arrival of the deputy. Simply stated, at the time plaintiff left the apartment, the Sheriff's Department (quite literally) had done nothing to lull plaintiff into a false sense of security or to prompt plaintiff to relax his own vigilance. To the contrary, plaintiff left the apartment and went to the laundromat because he was worried about Kelsey and Blake; in effect, plaintiff increased his own vigilance in response to the deputy's failure to arrive in a timely fashion. Under such circumstances, plaintiff's purported reliance upon the promise of assistance by the Sheriff's Department was not justified. In short, while the underlying events indeed are tragic and the inability of defendant's agent to protect plaintiff is regrettable, we are constrained to conclude that plaintiff failed to tender sufficient admissible proof to raise a question of fact as to justifiable reliance. Accordingly, Supreme Court properly granted defendant's motion for summary judgment dismissing the complaint.

Mercure, J.P., Peters, Rose and Kane, JJ., concur. Ordered that the order is affirmed, without costs.