JUDITH L. STARR, Individually and as Parent and Guardian of TIFFANY R. STARR, an Infant, and as Administrator of the Estate of STEPHEN A. STARR, Deceased, et al., Respondents, v COUNTY OF CORTLAND, Appellant. [774 NYS2d 596]—

Mugglin, J. Appeal from a judgment of the Supreme Court (Rumsey, J.), entered September 13, 2002 in Cortland County, upon a verdict rendered in favor of plaintiffs.

On September 21, 1994, plaintiff Amber Starr, then a senior in high school, advised Jonathan Merchant, a college student, that she no longer wished to be his girlfriend and would not date him in the future. For the next three months, Merchant's attempts to resurrect his relationship with Amber progressed from annoying to threatening. The Starr family's responses likewise progressed from polite requests that he desist to demands that he do so. Nevertheless, Merchant persisted, telephoning the Starr residence at all hours of the day and night and, on occasion, personally contacting Amber in various places. Finally, on December 27, 1994, Amber's mother, plaintiff Judith L. Starr (hereinafter the mother), her sister, plaintiff Tiffany R. Starr, and Amber went to the Cortland County Sheriff's Department. Amber, who had to leave for a cheerleading obligation, agreed to return on December 28, 1994. The mother and Tiffany gave depositions to Deputy Sheriff Donald Warner. As they were finishing this process, to the surprise of all of them, Merchant called the Sheriff's Department, said he had heard the Sheriff might be looking for him, and agreed to come in. The mother and Tiffany, anxious not to meet Merchant, left and were escorted home by a lieutenant in the Department. Merchant arrived, was arrested for aggravated harassment, and taken before a local magistrate who set bail. On December 28, 1994, Merchant's mother posted bail and he was released from jail, a fact that the Starrs learned that afternoon. At 10:00 P.M. on December 28, Amber returned with her mother and her new boyfriend to the Sheriff's Department, where Amber gave her written statement concerning Merchant's conduct up to December 27, 1994. Additionally, Amber and her mother told Warner about a hangup phone call that they had received that afternoon, which they assumed had been placed by Merchant.

In the early morning hours of December 30, 1994, Merchant shot the lock off a door at plaintiffs' home, entered and, after threatening Amber with a shotgun, shot and killed Amber's father who had come to her rescue. Plaintiffs then commenced this wrongful death action alleging that defendant failed to provide them with adequate police protection. At trial, plaintiffs each testified that they were repeatedly assured by the Sheriff's Department that they would be looking for Merchant, would get him on anything they could, and that nothing was going to happen to the family. They further testified that they had no contact from Merchant on December 29, 1994 and, therefore, assumed that it must have been because he had been rearrested.

After trial, the jury determined that a special relationship between plaintiffs and defendant was established and defendant

was negligent in carrying out the duty of protection it had assumed, and it rendered a verdict in favor of plaintiffs. Defendant's motion to set aside the jury verdict was denied by Supreme Court and defendant now appeals.

It is settled law that, as a general proposition, a municipality is not responsible for injuries resulting from a failure to provide police protection (*see Kircher v City of Jamestown*, 74 NY2d 251, 255 [1989]; *Cuffy v City of New York*, 69 NY2d 255, 260-261 [1987]; *Sorichetti v City of New York*, 65 NY2d 461, 468 [1985]; *Finch v County of Saratoga*, 305 AD2d 771, 772-773 [2003]). However, a narrow exception exists which imposes liability on a municipality if a plaintiff's evidence establishes a special relationship between the injured person and the municipality by showing (1) an assumption by the municipality through promises or actions of an affirmative duty to act on behalf of the party who was injured, (2) knowledge on the part of a municipality's agents that inaction could lead to harm, (3) some form of direct contact between the municipality's agents and the injured party, and (4) that party's justifiable reliance on the municipality's affirmative undertaking (*see Cuffy v City of New York, supra* at 260). Once the evidence establishes the required special relationship, the actions of the police are judged by analyzing whether they acted reasonably under the circumstances (*see Sorichetti v City of New York, supra* at 470; *De Long v County of Erie*, 60 NY2d 296, 306 [1983]).

The parties do not dispute that these legal principles apply to this case. We have followed and applied them at least three times in the last few years (*see Finch v County of Saratoga, supra*; *Clark v Town of Ticonderoga*, 291 AD2d 597 [2002], *lv denied* 98 NY2d 604 [2002]; *Grieshaber v City of Albany*, 279 AD2d 232 [2001]). The precise dispute here arises from defendant's argument that plaintiffs' proof does not establish the fourth element, i.e., plaintiffs' justifiable reliance on the municipality's affirmative undertaking. In reviewing and deciding this issue, we are mindful that the factual determinations of a jury are to be afforded great deference and will not be disturbed unless they could not be reached on any fair interpretation of the evidence (*see Lockhart v Adirondack Tr. Lines*, 305 AD2d 766, 767 [2003]; *Duff v De Sorbo*, 304 AD2d 870, 871 [2003]). Moreover, we are to afford plaintiffs every favorable inference reasonably drawn from the evidence (*see Duff v De Sorbo, supra* at 871). In reviewing the evidence, we, of course, are guided by the principles expressed in our precedent: "As this Court recently reiterated, the 'reliance' required in this context is not an abstract element that may be satisfied by the

plaintiff's hope or belief that the defendant could provide adequate police protection. Rather, as applied to the matter before us, it was plaintiff's burden to demonstrate that defendant's conduct lulled him into a false sense of security, induced him to either relax his own vigilance or forego other viable avenues of protection, and thereby placed himself in a worse position than he would have been in had defendant never assumed the underlying duty" (*Finch v County of Saratoga, supra* at 773 [citations omitted]).

This record is devoid of any evidence that plaintiffs placed themselves in a worse position than they would have been had defendant's Sheriff's Department never assumed the underlying duty. Plaintiffs' hope or belief that Merchant may have been rearrested on December 29, 1994 is insufficient. Notably, the promises of police protection made by the Sheriff's Department on December 27, 1994 were fulfilled. Merchant was arrested. Amber's statement of December 28, 1994 added no new information after December 27, furnishing no new basis upon which to rearrest Merchant. Viewing plaintiffs' evidence in the light most favorable to them, representatives of the Sheriff's Department on December 28 promised that they would "do everything to get him," that "we would do everything to protect you," and "we will get him in any way" they could. However, those promises represented merely expressions of future intentions and did not guarantee Merchant's arrest or the safety of the Starr family. Indeed, Amber testified that she was told that the Sheriff's Department could not furnish her with a bodyguard. In any event, regardless of whether such statements might be adequate to lull one into a false sense of security, here there is insufficient proof that plaintiffs were induced to relax their vigilance. Notably, trial testimony concerning an abandoned vacation plan does not support an inference that plaintiffs failed to exercise other avenues of protection under the particular circumstances herein. Based on the proof, we conclude that members of the Starr family were not placed in a worse position as a result of any police promise as they did not alter their customary daily activities either before or after the police contact. Thus, there is no evidence of justifiable reliance, and we are constrained to find that defendant's motion to set aside the verdict should have been granted as a matter of law.

Cardona, P.J., Crew III, Rose and Kane, JJ., concur. Ordered that the judgment is reversed, on the law, without costs, motion to set aside the verdict granted and complaint dismissed.