■ CHRISTINA MARIE CONDE et al., Appellants, v CITY OF NEW YORK et al., Respondents. [808 NYS2d 347]—

In an action to recover damages for personal injuries, the plaintiffs appeal from an order of the Supreme Court, Kings County (Hutcherson, J.), dated April 14, 2003, which granted the defendants' motion for summary judgment dismissing the complaint.

Ordered that the order is affirmed, with costs.

The plaintiffs are members of an extended family who resided together in an apartment in Brooklyn. In 1996 Danielle DiMedici, a member of the family living in the apartment, was kidnapped by James Parker, her former boyfriend. After several days, Parker released DiMedici and threatened to kill her and her family if she did not resume their relationship. After her release, the New York City Police Department (hereinafter the NYPD) began providing 24-hour protection to the family at its residence. Approximately eight days later, the NYPD informed the family that it was discontinuing the 24-hour protection but would provide "special attention" to the family residence by hourly or half-hourly police visits. Approximately 36 hours after the police implemented the "special attention" protection, Parker returned, held the family hostage for several hours, killed DiMedici and her grandmother, wounded several other family members, and eventually killed himself.

Generally, a municipality may not be held liable for the failure to provide police protection because the duty to provide such protection is owed to the public at large, rather than to any particular individual (*see Cuffy v City of New York*, 69 NY2d 255, 260 [1987]). A narrow exception to the rule exists where a special relationship exists between the municipality and the injured parties (*see Cuffy v City of New York, supra*; *see also Mastroianni v County of Suffolk*, 91 NY2d 198, 203 [1997]; *Basher v City of New York*, 268 AD2d 546, 547 [2000]). The elements of a special relationship are (1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured, (2) knowledge on the part of the municipality's agents that inaction could lead to harm, (3) some form of direct contact between the municipality's agents and the injured party, and (4) the injured party's justifiable reliance on the municipality's affirmative undertaking (see *Mastroianni v County of Suffolk, supra; Tarnaras v County of Nassau*, 264 AD2d 390 [1999]).

The defendants established their prima facie entitlement to summary judgment dismissing the complaint. In opposition, the plaintiffs failed to raise a triable issue of fact as to their justifiable reliance on the defendants' affirmative undertaking to provide them with protection. The element of reliance "provides the essential causative link between the 'special duty' assumed by the municipality and the alleged injury. Indeed, at the heart of most of these 'special duty' cases is the unfairness that the courts have perceived in precluding recovery when a municipality's voluntary undertaking has lulled the injured party into a false sense of security and has thereby induced him [or her] either to relax his [or her] own vigilance or to forego other available avenues of protection" (*Cuffy v City of New York, supra* at 261). It is the plaintiffs' burden to show that the defendants' conduct actually lulled them into a false sense of security, induced them to either relax their own vigilance or forego other avenues of protection, and thereby placed themselves in a worse position than they would have been had the defendants never assumed the duty (*see Finch v County of Saratoga*, 305 AD2d 771, 773 [2003]; *Clark v Town of Ticonderoga*, 291 AD2d 597, 599 [2002]).

The plaintiffs were expressly told that the defendants would provide "special attention." This "special attention" consisted of a police officer who would "walk by" or "drive by" the plaintiffs' apartment building "from time to time" to "check on the apartment." The NYPD roll-call reports and memo books demonstrated that one or two uniformed officers surveilled the plaintiffs' apartment building every half hour or hour. The parties do not dispute that the NYPD provided "special attention." Simply stated, the NYPD did exactly what it promised the plaintiffs that it would do by periodically going by the apartment and providing "special attention" to them. Upon being informed that the NYPD was withdrawing the 24-hour protection of the plaintiffs' home and replacing it with "special attention," the plaintiffs' could justifiably rely only upon the "special attention" protection which was promised and provided.

Under the facts of this case, a special relationship existed, but only to the extent of the "special attention." The dissent misapprehends the analytical construct of "reliance" by inexplicably considering it as a function of "outcome." The reliance element is not to be viewed solely on the basis of whether or not the protection afforded the citizen was ultimately successful. Rather, reliance must be examined in the specific context of the nature of the affirmative duty undertaken. The tragic outcome cannot distract from the issues nor may it cloud the focus of our analy-

sis. The implications of our dissenting colleague's rationale would impose a quasi-insurer's liability upon the municipality in clear contravention of firmly-established precedent and sound public policy.

Thus, the Supreme Court properly granted the defendants' motion for summary judgment dismissing the complaint. Adams, J.P., Smith and Rivera, JJ., concur.

Luciano, J., dissents and votes to reverse the order and deny the defendants' motion for summary judgment.

The core issue is whether there are triable issues of fact which precluded the grant of the defendants' motion for summary judgment dismissing the complaint. The majority opines that summary judgment was warranted on facts which, I believe, do not support its conclusion.

The gravamen of the majority's holding is that since the family members were aware that the defendant New York City Police Department (hereinafter NYPD) had withdrawn its around-the-clock protection, they did not justifiably rely on a police undertaking to protect them, such that there was no longer a special relationship as is required to form the basis of municipal liability to them. This conclusion is the result of issue determination rather than issue finding and is inappropriate on a motion for summary judgment (*Rotuba Extruders v Ceppos,* 46 NY2d 223 [1978]).

There is no challenge to the conclusion that justifiable reliance provides the essential nexus between the duty assumed by the defendants and the injuries sustained by the family. It is also undisputed that the defendants initially concluded that the circumstances of the kidnapping and threats of harm by James Parker created such a foreseeable risk, that refusal of protection to the family would lead to tragedy.

After the release of the decedent, Danielle DiMedici, by James Parker, the NYPD, based upon this foreseeable risk, determined that the circumstances required 24-hour protection to the family at its residence. The record is silent as to what standard or protocol was followed to make this decision.

This level of protection continued for eight days and then the NYPD informed the family that 24-hour protection would be discontinued and a lesser protocol of protection, termed "special attention" by the defendants, would be provided. Again, the record does not address what caused the NYPD to inexplicably conclude that a lesser protocol of protection was then appropriate.

The imperative for 24-hour protection, however, is manifest

in the record. James Parker had an extensive violent criminal record including the acts of kidnapping, assault with a baseball bat, and threats against the decedent, Danielle DiMedici, and her family. Moreover, the NYPD considered James Parker "to be armed and dangerous". In fact, the decedent, Danielle DiMedici, had an order of protection against him. After violation of the order of protection, a warrant of arrest was issued. Notably, James Parker was never arrested on the warrant.

The fact that the NYPD actually fulfilled the promise to provide "special attention" to the family members by providing a police officer to "drive by" or "walk by" their apartment from "time to time" to "check on the apartment", is irrelevant since the critical question is whether the family relied upon this reduced level of protection provided to their detriment, not whether the level of protection promised was carried out (see *Cuffy v City of New York,* 69 NY2d 255 [1987] [injured's party's reliance provides essential causative link between municipality's affirmative undertaking and injury]).

I do not agree with the majority's position that, upon being informed that the NYPD was withdrawing the 24-hour protection of the family's home and replacing it with the "special attention" protocol, the family could only justifiably rely on that reduced level of protection, and since "special attention" was in fact provided, no liability lies. None of the cases applying the special relationship test purport to hold that a municipality is shielded from responsibility for inadequate protection simply because all that was promised to them was inadequate. Nor does logic support this argument. If a plaintiff can establish that he or she justifiably relied to his or her detriment on promised protection, adequate or not, then the final element of the special relationship test will be satisfied. In short, a municipality should not be shielded from liability for a negligent failure to provide sufficient protection from a known threat of harm on the basis that it provided the inadequate protection which it promised.

In that regard, it is noted that the majority disagrees with my analysis of the justifiable reliance element of the special relationship test, and, more specifically, its application to the facts of this case. The majority, however, fails to articulate any basis for its finding that, as a matter of law, the family members did not justifiably rely upon the NYPD's promise of "special attention." In the majority's view, the fact that the promised "special attention" was actually provided, negates any possibility that the family members may have justifiably relied on the NYPD's promise of "special attention." That reasoning, however, puts

the cart before the horse. As the majority concedes, a special relationship did exist here, "but only to the extent of the 'special attention'." Whether or not the family members justifiably relied upon the affirmative duty undertaken by the NYPD to protect them, is an issue of fact. If it is determined that the family members did justifiably rely upon that undertaking, then the trier of fact will have to further determine whether the NYPD' s actions to protect the family members were reasonable under all of the circumstances. Contrary to the majority's conclusion, submission of these issues to a jury will not impose a quasi-insurer's liability upon the municipality.

It is ineluctable that an issue of fact exists as to whether the family was lulled into a false sense of security by the promise that they would receive "special attention" from the NYPD. The fact that the family was less justified in relying on the assurances of "special attention" than they had been in relying on the previously provided twenty-four hour a day protection, does not render their reliance unjustified as a matter of law (*see Mastroianni v County of Suffolk,* 91 NY2d 198 [1997] [fact that officers refused to make arrest did not render decedent's reliance on officer's undertaking to enforce order of protection unreasonable]). There was still an affirmative undertaking to provide the family with protection, albeit, a lesser undertaking than twenty-four hour a day protection.

There is evidence, furthermore, that the family relied on the NYPD's promise of "special attention". Most notably, the fact that the family members, knowing the threat of harm to be genuine, and aware that the level of protection to be provided by the police had been decreased, nevertheless took no actions on their own to protect themselves (*see Clark v Town of Ticonderoga,* 291 AD2d 597 [2002] [to establish element of reliance it is plaintiff's burden to show that defendants' conduct lulled her into a false sense of security, induced her to relax her own vigilance or forego other avenues of protection and thereby placed her in a worse position than she would have been in had they never assumed the duty]).

The family did not take temporary shelter elsewhere, while waiting for the police to apprehend James Parker. The plaintiff Denise Hussey, testified at her examination before trial, that on September 14, 1996 and September 15, 1996, after the reduced level of protection was effectuated, the children's friends were "in and out" of the house. A jury may easily conclude from these facts that the family did indeed rely on the police promise of "special attention" to protect them (*see De Long v County of Erie,* 60 NY2d 296, 305 [1983] ["cannot be said as a matter of

law that (911 operator's assurances that help would be there 'right away') played no part in her decision to remain in the home and not seek other assistance"]; *compare Sachanowski v Wyoming County Sheriff's Dept.,* 244 AD2d 908, 909 [1997] [lack of reliance established where victim and decedent "did not wait helplessly, but armed themselves with (victim's) shotgun"]).

It is simplistic to state, in retrospect, that the family's reliance on the promise of special attention was not justified, in light of the deadly events that followed. Whether the reliance was justified, however, must be measured as of the time of its existence. In this regard, it is noted that the NYPD, fully aware of the continuing danger posed by James Parker to the family, nevertheless ordered the 24 hour level of protection reduced to "special attention".

It is clear then, that the NYPD believed that "special attention" would be adequate to protect the family. Indeed, the lead detective on the case testified at his deposition that at the time the protection protocol was changed, he believed that "special attention" would be adequate to protect the family (R 189-190). There is no basis to conclude, as a matter of law, that the family was not justified in relying on a level of protection that the NYPD itself deemed adequate under the circumstances. This factor also serves to distinguish this case from those in which a municipality refused a request for protection, or totally failed to act despite knowledge that protection was necessary (*see i.e. Kircher v City of Jamestown,* 74 NY2d 251 [1989] [witnesses to abduction told police officer who said he would "call it in", but did nothing]; *Riss v City of New York,* 22 NY2d 579 [1968] [victim's pleas to police for protection met with indifference]).

Additionally, the "special attention" afforded the family after September 13, 1996 goes beyond that which ordinary citizens commonly receive, thereby sustaining the finding that the special relationship between the NYPD and the plaintiffs was still in force. Since this "special attention" was extraordinary and was more than the ordinary citizen might expect, one may easily conclude that the special relationship did not end on September 13, 1996.

The continuing oversight by the District Attorney is poignantly significant. The family was to meet the District Attorney to discuss relocation for safety purposes to another residence which also could support a finding that the family was justifiably relying on the municipality's endeavor to protect them from the known threat posed by James Parker. Without question, the umbrella of protection continued.

It cannot be contested that the NYPD failed to protect this

family. What is in dispute is whether or not the family justifiably relied upon the reduced level of protection promised to them, to wit: "special attention". This is the central question of fact in this case, and even standing alone without considering other questions of fact which exist, is sufficient to require denial of the defendants' motion for summary judgment.