■ JENNIFER HANNA, Individually and as Parent and Guardian of CIERA LONGSHORE, et al., Infants, Respondent, v ST. LAWRENCE COUNTY et al., Appellants, et al., Defendants. [825 NYS2d 798]—

Carpinello, J. Appeal from an order of the Supreme Court (Demarest, J.), entered February 27, 2006 in St. Lawrence County, which, inter alia, denied certain defendants' motions for summary judgment dismissing the complaint against them.

On July 8, 2001, Andrew Longshore was arrested, jailed and charged with numerous crimes, including assault in the second degree, harassment in the first degree, unlawful imprisonment in the first degree and menacing in the second degree, following a violent domestic incident with plaintiff, his live-in girlfriend with whom he had two children. Specifically, on this day,

Longshore physically assaulted plaintiff, held her hostage for several hours and threatened to kill her. A temporary order of protection was entered against Longshore directing him to, among other things, stay away from plaintiff and her residence, as well as surrender all firearms.

After the incident, plaintiff sought refuge in a safe house for a day and then stayed with a friend for another week, returning home on July 17, 2001. One day later, however, Longshore was released from jail and placed on house arrest. His house arrest took place at the home of his grandmother, which was less than one mile from plaintiff's home. Longshore's father and uncle, defendants Willard Longshore and Terry Longshore, respectively, lived in the grandmother's home at that time. It is undisputed that Longshore owned a 20-gauge shotgun which he kept at his grandmother's house. In addition, numerous other guns owned by Longshore's uncle were inside the home.

Following Longshore's release from jail, which plaintiff had repeatedly pleaded against, plaintiff advised deputies employed by defendant St. Lawrence County Sheriff's Department that there was "an arsenal of guns" in the grandmother's house. She further expressed concern about the close proximity of the two houses and her fear that Longshore would carry out his threat to kill her. According to plaintiff, she was repeatedly assured by Department representatives that all firearms had been removed from the grandmother's home and that Longshore was equipped with an electronic monitoring device that prevented him from leaving it. On July 23, 2001, Longshore broke into plaintiff's house and shot her twice with his 20-gauge shotgun, seriously wounding her. He then shot himself to death.

Plaintiff commenced this action against, as relevant here, Longshore's father, Longshore's uncle, the Department and defendant St. Lawrence County. Motions for summary judgment by these defendants were denied, prompting this appeal. While summary judgment was properly denied to the two municipal defendants, we reach a contrary conclusion with respect to the two individual defendants.

We first address the propriety of Supreme Court's decision to deny summary judgment to the municipal defendants. It is well-settled law that a municipality cannot be liable for injuries resulting from the failure to provide adequate police protection unless a special relationship existed between that municipality and the injured party (*see Mastroianni v County of Suffolk*, 91 NY2d 198, 203 [1997]; *Kircher v City of Jamestown*, 74 NY2d 251, 257 [1989]). To demonstrate the existence of this relationship, the injured party must show four distinct elements (*see*

*Cuffy v City of New York*, 69 NY2d 255, 260 [1987]), only one of which is at issue on this appeal, namely, whether plaintiff justifiably relied on the Department's affirmative undertaking to act on her behalf.[1] Justifiable reliance in this context is not an "abstract element" (*Finch v County of Saratoga*, 305 AD2d 771, 773 [2003]); rather, plaintiff must show that the Department's "voluntary undertaking . . . lulled [her] into a false sense of security and . . . thereby induced [her] either to relax [her] own vigilance or to forego other available avenues of protection" (*Cuffy v City of New York, supra* at 261). Assuming, without deciding, that the municipal defendants established their prima facie entitlement to summary judgment, we find, construing the facts in a light most favorable to plaintiff as the nonmoving party (*see Stata v Village of Waterford*, 225 AD2d 163, 167 [1996]; *Wenger v Goodell*, 220 AD2d 937, 938 [1995]), that she has raised a triable issue of fact on the element of justifiable reliance.

According to plaintiff's proof, when she learned of Longshore's imminent release from jail, she repeatedly begged the Department not to release him for fear that he would kill her. When she expressed particular concern over the close proximity of his grandmother's home to her own, she was informed that "it's not an issue, you're safe." When she advised the Department of the presence of guns inside the grandmother's home, she was told that the house had been searched and that all weapons had been removed from it (*compare Halpin v Town of Lancaster*, 24 AD3d 1176 [2005], *affd* 7 NY3d 827 [2006]).[2] She was also repeatedly advised that there was no way that Longshore could get to her because of the electronic monitoring device that had been placed upon his ankle. Indeed, according to plaintiff, it was "absolutely" her understanding that Longshore could not come after her while equipped with this device.

In short, according to plaintiff, the Department "reassured [her] over and over and over" that she was safe and "eventually they convinced" her of same. Thus, as a result of these specific

---

**1.** The municipal defendants concede, for the purpose of summary judgment, that the first three prongs under *Cuffy* have been demonstrated by plaintiff. These elements include "(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; [and] (3) some form of direct contact between the municipality's agents and the injured party" (*Cuffy v City of New York, supra* at 260).

**2.** It appears that no one ever retrieved weapons from the grandmother's home or conducted a search of it. According to Longshore's father, Longshore's 20-gauge shotgun was laying in plain view on a bed in the house.

and repeated assurances, plaintiff remained in her home with her children. In light of the foregoing, we find that a question of fact has been raised concerning whether the municipal defendants' conduct induced plaintiff's reasonable detrimental reliance, that is, whether the Department's assurances lulled her into a false sense of security and induced her to relax her own vigilance and forego other avenues of protection, namely, relocating to a safe house or different residence as she had done immediately after the July 8, 2001 attack (*see Mastroianni v County of Suffolk, supra; Laratro v City of New York*, 25 AD3d 184, 191-192 [2005]; *Tarnaras v County of Nassau*, 264 AD2d 390, 391 [1999]; *Levy v City of New York*, 232 AD2d 160, 161-162 [1996]; *Wenger v Goodell, supra* at 938-939; *Thomas v City of Auburn*, 217 AD2d 934, 935 [1995]; *Bargy v Sienkiewicz*, 207 AD2d 606, 609 [1994]; *Berliner v Thompson*, 174 AD2d 220, 224 [1992]; *Berliner v Thompson*, 166 AD2d 78, 82 [1991]; *cf. Starr v County of Cortland*, 6 AD3d 775 [2004], *lv denied* 3 NY3d 602 [2004]; *Clark v Town of Ticonderoga*, 291 AD2d 597 [2002], *lv denied* 98 NY2d 604 [2002]; *Grieshaber v City of Albany*, 279 AD2d 232 [2001], *lv denied* 96 NY2d 719 [2001]; *Melanson v State of New York*, 215 AD2d 43 [1995], *lv denied* 87 NY2d 810 [1996]).

We now turn to the issue of whether Longshore's father and uncle should have been granted summary judgment. The theory of liability against them is that they negligently entrusted Longshore with the 20-gauge shotgun that he used to shoot plaintiff and that they should have secured this weapon from him, knowing his propensity for violence against her. In other words, plaintiff argues that a reasonable person would have secured the subject shotgun so as to prevent Longshore from using it. While this latter supposition may perhaps be true, the fundamental inquiry is whether these members of Longshore's family owed a "legally recognized duty" to plaintiff to do so (*Hamilton v Beretta U.S.A. Corp.*, 96 NY2d 222, 232 [2001]). No matter how foreseeable it was that Longshore would attempt to carry out his threat to kill plaintiff, "[f]oreseeability, alone, does not define duty—it merely determines the scope of the duty once it is determined to exist" (*id.*). As noted by the Court of Appeals on this threshold: "We have been cautious, however, in extending liability to defendants for their failure to control the conduct of others. A defendant generally has no duty to control the conduct of third persons so as to prevent them from harming others, even where as a practical matter [the] defendant can exercise such control. This judicial resistance to the expansion of duty grows out of practical concerns both about potentially limitless liability and about the unfairness of imposing liability

for the acts of another "(*id.* at 232-233 [internal quotation marks and citations omitted]).

Here, neither Longshore's father nor uncle had actual control over Longshore's actions at any time, including while he was under house arrest (*see Purdy v Public Adm'r of County of Westchester*, 72 NY2d 1, 8 [1988]; *Gaige v Kepler*, 303 AD2d 626, 627 [2003]; *Fay v Assignment Am.*, 245 AD2d 783, 784 [1997]), nor did either have a relationship with plaintiff which itself required them to protect her. To this end, we note that Longshore was an adult, the subject shotgun actually belonged to him, both his father and uncle believed that it was inoperable and neither had anything to do with his placement in their home for house arrest. Thus, while certain relationships between parties give rise to a duty (*see Purdy v Public Adm'r of County of Westchester, supra; D'Amico v Christie*, 71 NY2d 76, 88 [1987]; *Pulka v Edelman*, 40 NY2d 781, 785-786 [1976]), no such relationship exists here (*see Gaige v Kepler, supra; Fay v Assignment Am., supra*). Otherwise stated, the mere fact that either of these family members could have exercised control "as a practical matter" does not create a duty to do so (*D'Amico v Christie, supra* at 88; *see Fay v Assignment Am., supra*). Further, any moral or familial obligation that either may have had to Longshore or plaintiff did not constitute an actionable legal duty (*see Pulka v Edelman, supra* at 786). Accordingly, summary judgment should have been granted to them.

Cardona, P.J., Spain, Rose and Lahtinen, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as denied the motion of defendants Willard Longshore and Terry Longshore; said motion granted, summary judgment awarded to said defendants and complaint dismissed against them; and, as so modified, affirmed.